## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company *v.* Ropp.

[No. 23,397.   Filed January 25, 1921.]

1.   MASTER AND SERVANT.—*Injury to Servant from Unanticipated Cause.*—*Liability.*—In an action for injuries to a railroad shop employe caused by a locomotive tire slipping from a horizontal

scantling upon which it was apparently at rest, .after having been driven from the wheel, where the jury found specially that neither the employer nor the employe had reason to know that such an accident could occur, the employer was not guilty of negligence, and hence a general verdict was not sustained by sufficient evidence, the employer being only required to use the care that ordinarily prudent men would exercise under like circumstances.    p. 119.

2. MASTER AND SERVANT.—*Injuries to Servant.—Ordinary Care. —Instructions.—Sufficiency.*—In an action for injuries to a railroad shop employe, instructions which, in defining the duty owed by the employer to the employe relative to the furnishing of appliances and safety devices, etc., employ the language of the latter part of §4, Acts 1911 p. 597, §3862a *et seq.* Burns 1914, and which limit such duty only to the necessity for preserving a reasonable efficiency of the work without regard to the additional cost of such appliances, *held* erroneous as exacting more than ordinary care.    pp. 120, 121.

3. MASTER AND SERVANT. — *Employer's Liability. — Statute. — Common Law.*—The provisions of §4, Acts 1911 p. 597, §3862a *et seq.* Burns 1914, declaring generally the duties of employers relative to the furnishing of appliances and safety devices, do no more than declare the common law.    p. 122.

4. MASTER AND SERVANT.—*Assumption of Risk.—Negligence.— Ordinary Care.*—An employe assumes the dangers inherent and apparent in the employment and in appliances used that cannot be guarded against by ordinary care, but does not assume such inherent and apparent risks as are brought about by the employer's negligence, nor those that may be guarded against by ordinary care.    p. 122.

5. MASTER AND SERVANT.—*Employer's Liability Act.—Necessity of Proof of Negligence.*—Since the Employer's Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) did not abolish negligence, it is still necessary, in actions under it, to prove negligence of the employer before there may be a recovery by the employe.    p. 122.

6. MASTER AND SERVANT.—*Appliances.—Evidence.—Competency.* —In an action by a railroad shop employe for injuries caused by a locomotive wheel tire slipping from a scantling on which it rested, testimony that hooks could be placed on the ends of the scantling to keep tires from slipping off was incompetent, where there was no effort to show that different and safer appliances were commonly used by men engaged in like work. p. 123.

7. MASTER AND SERVANT.—*Trial.—Theory.—Instructions.*—The fact that the plaintiff employe indicated, at the close of the

evidence, that he relied on the state Employers' Liability Act, and the defendant thought the evidence brought the case within the federal act, did not present a question to be disposed of by motion to direct a verdict, the court was required to instruct the jury under whichever act the evidence brought the case. . p. 123.

8. COMMERCE.—*Interstate.—Railroad Shopman.—Applicability of Federal Employers' Liability Act.*—A railroad shop employe engaged in removing tires from locomotive wheels, which tires were afterwards made into piston keys and rings that might be used in engines engaged in interstate commerce, was not engaged in "interstate transportation" or in work so closely related to it as to be practically a part of it, and therefore cannot recover under the federal Employers' Liability Act. p. 123.

From Johnson Circuit Court; *W. E. Deupree,* Judge.

Action by Joseph Ropp against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*Isaac Carter* and *Miller & White,* for plaintiff.
*Ed K. Adams* and *Herbert C. Jones,* for appellee.

TOWNSEND, J.—Appellee recovered a judgment against appellant for personal injuries.

. Appellant claims error in overruling its motion for a new trial. The questions are: (1) Sufficiency of evidence; (2) erroneous instructions; (3) whether the federal or state Employers' Liability Act applies.

The complaint is drawn to invoke either the state or federal Employers' Liability Act, according to the exigencies of the evidence.

We will first give a brief summary of the evidence.

Appellant has an interstate line of railroad. It maintains and operates machine and repair shops at Beech Grove, Marion county, Indiana, where the business of constructing and repairing engines and cars is carried on. It employs in these shops a large number of men.

The particular department in which appellee was

working at the time of his injury had to do with taking old tires from locomotive drive wheels. The method by which this was done was to place upon a jack for that purpose two locomotive drive wheels attached to the axle. There was a groove in the top of this jack in which the axle rested, the two wheels being on the outside of the jack. Blocks and scantling were furnished to the appellee to fix the wheels so that they would not turn. One scantling was blocked in the lower part of the wheel to prevent turning, and another 4"x4" oak scantling eight feet long was blocked against the upper rim of the wheels. When this latter scantling was so blocked, it projected fourteen or fifteen inches beyond the rim. The projection was to receive the tire when driven from the wheel. After the wheels were thus blocked, there was applied to the wheel a perforated pipe conforming to the tire, which pipe was connected to an oil tank. The oil flowing from the perforations was ignited. The tire thus heated and expanded was driven off by sledges. After the tire had been sufficiently heated, so that it would start by tapping it with a sledge, the heating apparatus was removed and the tire driven from the wheel by two persons, one on each side, standing back of the wheel and driving out, the purpose being to have the tire fall upon the projecting scantling. When the tire fell upon this scantling, the under part of it was several inches from the floor.

Appellee had been removing tires by this method for eighteen months previous to his injury. This method of removing tires had been used in these shops for at least nine years.

On the day of the accident in question, a tire was driven from a locomotive wheel by appellee and another employe of the company. This tire came to rest on the projecting scantling. Appellee stood by the

tire for some appreciable time after it came to rest. He then walked about sixty feet to a hydrant to get a drink. Returning, he observed a fire in the sawdust on the floor and passed by where the tire was hanging to get a bucket of water to throw on the fire. While he was in the act of reaching for the bucket, for some unaccountable reason, the tire fell from the scantling. Or, as appellee puts it, it stood upon the floor and rolled over towards him like a hoop, and fell upon his right ankle, crushing it and necessitating amputation.

Appellee says that this particular tire, which was six inches wide, came to rest upon the projecting scantling about one inch from the rim of the wheel. He also says that the scantling projected about fourteen or fifteen inches beyond the rim. He also says that this 4″x4″ oak scantling was in good condition, the corners of it square, and the ends not burnt off; that there were no defects in it. He also admits that, if there were any defects in the scantling, or blocks, or gluts, he could get new ones; that he was so instructed; that he had frequently done so. He says that these particular wheels were properly blocked by him, so that they could not turn, and this scantling, which received this tire, was level.

The evidence shows, and the jury found by answers to special interrogatories, that no tire ever fell from a scantling after it had been driven from a wheel and came to rest. The evidence shows and the jury specially found by answers to special interrogatories that neither appellant nor appellee had reason to know that a tire ever would fall from a scantling after it came to rest. If appellant did not know that there was any danger, under these conditions, then it was not guilty of any negligence, and the verdict is not sustained by sufficient evidence. Indeed, it is difficult to see how there could be a finding for the appel-

lee in this case, under the evidence,. in light of the fact that the jury specially found that the appellant did not have reason to know that such an accident could happen. The most appellant was required to do was to use the care that ordinarily prudent men would exercise in like circumstances.

Now the negligence charged is the failure to furnish a scantling with a barrier or obstruction on the end thereof to keep a tire from slipping off. But 2. there is no evidence that any different appliances than those here used are commonly employed by men in like work. Indeed, it is difficult to see what could have kept this particular tire on that scantling. It came to rest one inch from the rim. It stayed there several minutes. It had seven or eight inches of square scantling projecting beyond it. The scantling was level. The tire weighed 1,000 pounds. The wheels did not turn. This tire must have been animated.

Instructions Nos. 1 and 2 requested by appellee and given by the court are as follows: ·

"No. 1. In this State it is and for more than two years has been the duty of all persons or corporations engaged in the care, operation and management of any business of whatsoever kind to see and to require that all appliances, tools and contrivances and everything whatsoever used therein are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, and it is also their duty to see and require that all machinery, appliances, tools, machines and contrivances used in such business are amply, adequately and properly constructed to bear all weight and adapted to and perform the services and meet the requirements for which they are designed or used with safety, and that they are properly and safely maintained.

"No. 2. It is the law in this state and has been for

Cleveland, etc., R. Co. v. Ropp—190 Ind. 115.

more than two years last past, and it is the duty of all owners, operators and managers, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building means, employment or business of whatsoever nature involving risk or danger to employes, or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such work, mechanism, machinery, appliances, building, means, employment or business, without regard to additional cost of suitable materials or safety appliances, or safe conditions, or operations, the first concern being safety to life, limb and health."

These instructions are erroneous, because they exact more than ordinary care. They are copies of the language in the latter part of §4, Acts 1911 p. 597 (§3862a et seq. Burns 1914), as follows:

2.

"And, generally, it shall be the duty of all owners, managers, operators, contractors, sub-contractors, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plants, means, employment, or business of whatsoever nature, involving risk or danger to employes, or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, cars, engines, machinery, appliances, apparatus, or other devices or materials, without regard to additional cost of suitable materials or safety appliances, or safe conditions, or operations, the first concern being safety to life, limb and health."

Statutes which are general in their terms do no more

than declare the common law. *Monteith* v. *Kokomo Wood, etc., Co.* (1902), 159 Ind. 149, 151, 64 N. E. 610, 58 L. R. A. 944; *Benkowski* v. *Sanders & Egbert Co.* (1915), 60 Ind. App. 374, 380, 109 N. E. 924. This is but another way of saying that the language quoted from the above statute has no effect at all in determining liability.

Instructions Nos. 4 and 5, given at the request of appellee, gave the jury to understand that it was no defense that the dangers and hazards inherent or apparent in the employment contributed to the injury. These instructions did this regardless of whether there was negligence on the part of appellant or not. There are dangers inherent and apparent in employment and in appliances used that cannot be guarded against by ordinary care. These dangers and risks the employe does assume. The risks inherent and apparent in the employment which an employe does not assume are those brought about by the negligence of the employer, or those which may be guarded against by ordinary care. Instructions which gave a jury to understand that an employer is liable because of risks inherent or apparent in the employment without any negligence on the part of the employer are erroneous.

The Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) does not abolish negligence. It is still necessary to prove negligence on the part of the employer before there can be a recovery. In *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258, it was, in effect, said that to hold otherwise would be to declare the act void.

In instruction No. 6, given at the request of appellee, the court committed the same error that he did in instructions Nos. 1 and 2.

Appellant also complains of certain instructions ten-

dered by it which were refused by the court. These instructions are correct, in the main, and should have been given, unless other instructions were given which cover the same subject-matter. We do not stop to investigate this matter; for we think what we have already said will be sufficient guide on retrial of this case.

Appellant also complains of the admission of certain evidence. A deputy factory inspector was placed upon the stand and asked, over the objection of the appellant and permitted to answer, that a hook could be placed on the ends of this scantling to keep the tire from slipping off. Two other witnesses were permitted to testify to the same effect. These questions and answers were improper in this case, considering the state of the evidence; for there was no effort on the part of appellee to show that different and safer appliances were commonly used by men engaged in like work. The appliances here used were simple in their nature and easily understood.

Appellant contends that the federal, and not the state, Employers' Liability Act applies. The fact that appellee indicated, at the close of the evidence, that he intended to rely on the state statute and appellant thought the evidence brought the case within the federal act, did not present a question to be disposed of by a motion to direct a verdict. The court was required to instruct the jury under whichever act the evidence brought the case. *Vandalia R. Co.* v. *Stringer* (1915), 182 Ind. 676, 106 N. E. 865, 107 N. E. 673, and cases there cited.

The court did adopt appellee's theory of the evidence and attempt to instruct accordingly. Therefore, if the federal act applies, the error, if any, would be in instructions. The evidence shows that appellee was engaged in taking old tires off wheels; that these tires were taken to the blacksmith's shop and

used to make piston keys; that the keys were used to keep crossheads and pistons together on various locomotives. There is nothing in the evidence to show that appellee was doing anything immediately connected with interstate commerce. The sole ground for invoking the federal statute seems to be that the pins and keys made from the old tires would, perchance in the future, be used in engines engaged in interstate commerce.

"The true test of employment in such commerce in the sense intended is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Chicago, etc., R. Co.* v. *Harrington* (1916), 241 U. S. 177, 180, 36 Sup. Ct. 517, 60 L. Ed. 941; *Shanks* v. *Delaware, etc., R. Co.* (1916), 239 U. S. 556, 558, 36 Supt. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C 797; *Delaware, etc., R. Co.* v. *Yurkonis* (1915), 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397. Measured by this test, appellee was not engaged in "interstate transportation," nor "in work so closely related to it as to be practically a part of it."

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.