CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY *v.* CHINN ET AL.

[No. 11,559. Filed February 2, 1923. Rehearing denied April 27, 1923. Transfer denied May 29, 1923. Writ Certiorari to Supreme Court of United States denied January 10, 1924.]

1. MASTER AND SERVANT.—*Railroad employee engaged in repairing track scales for interstate railroad not engaged in interstate commerce so as to render Workmen's Compensation Act inapplicable.*—One employed by an interstate railroad to repair track scales, used indiscriminately in weighing cars shipped in interstate and intrastate shipments, was not engaged in interstate commerce so as to render the Workmen's Compensation Act inapplicable (§9464 Burns 1926), as his work was not so closely connected with interstate transportation as to make it a part of interstate commerce, from which it follows that the Industrial Board would have jurisdiction of a claim for compensation by his dependents for his accidental death while making a trip to the weighmaster's office for his railroad mail. p. 652.

2. MASTER AND SERVANT.—*Finding of Industrial Board not disturbed on appeal if evidence supports it.*—A finding of the

Industrial Board in a proceeding under the Workmen's Compensation Act will not be disturbed on appeal where there was evidence to sustain it, as the Appellate Court will not weigh the evidence. p. 652.

From Industrial Board of Indiana.

Proceeding under the Workmen's Compensation Act by Eva Chinn and another for compensation for the death of Alfred P. Chinn, opposed by the Chicago, Milwaukee and St. Paul Railway Company. From an award for claimants, the defendant appeals. *Affirmed.* By the court in banc.

*Beasley, Douthitt, Crawford & Beasley,* for appellant.
*Hamill, Hickey, Evans & Danner,* for appellees.

NICHOLS, C. J.—This was an action before the Industrial Board to recover compensation for alleged injuries and death of Alfred P. Chinn, husband of Eva Chinn and father of Henry Chinn, which injuries were alleged to have been sustained while in the employ of appellant on December 20, 1921. It is alleged that the decedent's injuries were sustained by reason of an accident arising out of and in the course of his employment while acting as superintendent over men working in appellant's Hulman street yards in the city of Terre Haute.

The Industrial Board found that, on and prior to December 20, 1921, the decedent was in the employment of appellant at an average weekly wage of $24; that appellant was a common carrier and was engaged in such business during the entire period of the employment of the said decedent; that, as such common carrier, appellant, during said period, operated a line of railroad from points within the State of Indiana to points without, and was engaged in both interstate and intrastate commerce as such common carrier; that on December 20, 1921, while employed in and performing services for appellant as such common carrier in intrastate commerce, the said decedent received a personal injury by

an accident arising out of and in the course of his employment, and arising out of the performance of services in intrastate commerce; that such injury resulted in his death on January 16, 1922; that he left surviving him, as sole and only dependents, appellees, his wife, and his son under eighteen years of age; that said decedent was living with his said wife and son at the time of the injury and death, was supporting them from his earnings, and they were wholly dependent upon him; that appellant had personal knowledge of such injury and death at the time of the occurrence.

On this finding, the Industrial Board awarded appellees, in equal shares, compensation at the rate of $13.20 per week, to begin January 16, 1922, and continue during the period of their dependency, not exceeding 300 weeks.

Appellant answered that decedent and appellant, at the time of the alleged injuries, were each engaged in interstate commerce. That appellant operated a system of steam railroads extending through the states of Indiana, Illinois, Wisconsin and elsewhere. That, included in such system of steam railroads, were certain tracks known as the "Hulman Street Yards," consisting of side tracks, one of which contained railroad scales used for the purpose of weighing cars and freight used and transported in interstate commerce. That said decedent, at the time of the accident and injury, was employed by appellant in the construction, repair and upkeep of railroad tracks, bridges and scales. That the track on which said gang of men and the decedent were engaged at work in making repairs and in construction work was used to transport interstate commerce.

At the trial there was undisputed evidence that the decedent, with the men working under him, were generally employed in repairing tracks, bridges and scales and

had been repairing and improving the particular scales above mentioned, and it was stipulated and agreed that the scales in question were, prior to the making of the repairs on December 20, 1921, used indiscriminately in weighing cars containing freight shipped in intrastate and interstate commerce, and, subsequent to the making of such repairs, said scales were used indiscriminately in weighing freight transported in intrastate and interstate commerce, and that appellant operated the line of railroad involved, at and prior to the time of the accident, from Westport, Indiana to Faithorn, Illinois, and that it was a part of a system of steam railroads extending through the states of Indiana, Illinois, Wisconsin, Minnesota and other states in the northwest. At the time of the accident, decedent was making a trip to the yard master's office for his railroad mail, and, when crossing a track, was struck by one of appellant's trains, receiving the injury which, as appellees claim, resulted thereafter in his death.

It is observed that the facts in this case as to the nature of decedent's employment at the time of his injury, whether under the Workmen's Compensation Act, or the Federal Employer's Liability Act, are substantially undisputed, and the question becomes one of law for the court. The decisions of the different states are in irreconcilable conflict. For the purposes of this opinion, we do not need to discuss them.

In this state, the Supreme Court in *Southern R. Co.* v. *Howerton* (1914), 182 Ind. 208, 105 N. E. 1025, held that an employee of a railroad engaged in interstate commerce, who was himself engaged in the work of laying track, or assisting in doing so, was engaged in interstate commerce, and his action was controlled by the federal statute.

In *Cleveland, etc., R. Co.* v. *Ropp* (1921), 190 Ind. 115, 129 N. E. 475, the employee was engaged in taking

old tires off wheels; these tires were taken to the blacksmith shop and used to make piston keys; the keys were used to keep crossheads and pistons together on various locomotives. The court says that there was nothing in the evidence to show that the employee was doing anything immediately connected with interstate commerce. The court states the true test to be: "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" and then holds that, "measured by this test, appellee was not engaged in 'interstate transportation' nor 'in work so closely related to it as to be practically a part of it.'" As it seems to us, these cases are harmonized upon the theory that, in the first case, the employee was immediately connected with interstate transportation, while in the second, the employee was not so connected. In the instant case, appellees contend with much force that the scales involved were not directly and immediately used in interstate transportation; and that they could only be used to obtain weights for the clerical department; and that they had nothing whatever to do with the actual movement of trains. Adopting this contention, we must hold that the principle announced in the Ropp case is directly in point.

It seems to us that the rule as announced in the Howerton case, *supra*, that the decisions of the Supreme Court of the United States, within its domain, are binding upon this court, must be of controlling force. See, also, *Bennett* v. *Atchison, etc., R. Co.* (1919), 187 Iowa 897, 174 N. W. 798, where the court holds that the requirements and federal court interpretation of the federal act must prevail over any other state law or state court interpretation.

Appellant relies with much confidence upon *Pedersen* v. *Delaware, etc., R. Co.* (1912), 229 U. S. 146.

That case involved the right of an employee engaged in repairing a railroad bridge regularly used in both interstate and intrastate commerce. The bridge was a part of the right of way over which trains passed, and, therefore, the employee's work directly affected the movement of trains, and was immediately connected with interstate commerce. That case is in harmony with the case of *Southern R. Co.* v. *Howerton, supra,* and *Pryor* v. *Williams* (1920), 254 U. S. 43, 41 Sup. Ct. 36, was another bridge case, and it was tried without question as to its being within the scope of the federal act. But other federal cases have established the rule that unless the employment is immediately connected with interstate transportation, it is not within the scope of the federal act.

In *Delaware, etc., R. Co.* v. *Yurkonis* (1915), 238 U. S. 439, 59 L. Ed. 1397, it was held that an employee, while mining coal in a colliery owned and operated by a railroad company, the coal to be used in its conduct of interstate commerce, was not engaged in interstate commerce.

In *Chicago, etc., R. Co.* v. *Harrington* (1916), 241 U. S. 177, 60 L. Ed. 941, a switchman engaged in shifting coal cars from storage tracks to the company's coal sheds, to be placed in bins and supplied as needed to both intrastate trains and interstate trains, was held not to be engaged in interstate commerce.

In *Shanks* v. *Delaware, etc., R. Co.* (1915), 239 U. S. 556, 60 L. Ed. 436, it was held that an employee of a railroad company engaged in both interstate and intrastate commerce, working as a mechanic principally in running a machine where he shaped parts to be used in the repair of locomotives in immediate need of repair, and generally, but not exclusively, in the repair of locomotives used in interstate commerce, and who was engaged on Sunday in moving the counter shaft which

supplied power to the shaping machine when injured, was not employed in interstate commerce, and could not recover, the court saying: "The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis case, *was too remote from interstate transportation to be practically a part of it, and,* therefore, that he was not employed in interstate commerce within the meaning of the Employer's Liability Act." (Our italics.)

The Minnesota Supreme Court, in *Cousins* v. *Illinois Central R. Co.* (1914), 126 Minn. 172, held that a laborer wheeling coal to one of the car repairing shops for the purpose of heating stoves in the shop where other employees were engaged in repairing cars used in interstate commerce, was himself engaged in interstate commerce, but the court was reversed in this decision in 241 U. S. 641, 36 Sup. Ct. 446. The same court was again reversed in *Minneapolis, etc., R. Co.* v. *Nash* (1916), 242 U. S. 619, where the court held that a laborer engaged in moving parts of an out-house to replace an old one, was not engaged in interstate commerce.

Following the principle of these federal cases, we must hold that the work of improving and repairing the scales involved was not so closely connected with interstate transportation as to be controlled by the Federal Employers' Liability Act, and that the Industrial Board, therefore, had jurisdiction. There is evidence that the decedent's injury was the cause of his death, and this court will not weigh the evidence.

The award of the Industrial Board is affirmed.