## WABASH RAILWAY COMPANY v. WHITCOMB.

[No. 12,610. Filed January 27, 1927. Rehearing denied May 17, 1927. Transfer denied November 24, 1931. Appellant's petition for certiorari to United States Supreme Court denied March 21, 1932.]

*Dan W. Sims, Charles H. Stuart, Allison E. Stuart* and *J. D. Conner, Jr.*, for appellant.

*John H. Kay* and *Henry M. Dowling*, for appellee.

NICHOLS, J.—Action by appellee to recover damages from appellant for the death of her husband. Liability was predicated upon the federal Employers' Liability Act. The complaint was in two paragraphs. By the first paragraph, appellee sought to recover damages for the benefit of decedent's widow and next of kin on account of the death of said decedent. By the second paragraph, appellee sought to recover damages for the injuries to and suffering of said decedent in the interval between the accident and his death.

Decedent was a fireman upon appellant's railroad, and, on November 12, 1923, and near the station at Attica, there was a collision between the engine upon which he was fireman and another locomotive. He received injuries from which he died about 40 or 50 minutes following the collision.

There was a trial by jury resulting in a verdict against appellant for $25,000. From the judgment on that verdict, this appeal is taken.

Appellant respectively assigns that the court erred in overruling appellant's separate demurrer, respectively, to the first and second paragraphs of complaint, in overruling appellant's motion for a new trial, and in overruling appellant's motion in arrest of judgment.

Most of the facts are undisputed. The immediate cause of the accident, which occurred at 6:01 on the evening of November 12, 1923, was a collision between two of appellant's trains at a point on appellant's single

main track railroad, a short distance east of Attica, Indiana; the track at that point, and for about 3,611 feet west thereof, was practically straight, and ran in a generally northeast and southwest direction; the engines of both trains were moving with their tenders in front; the engine upon which appellee's decedent was then employed, known as "No. 417," was moving eastward on the main track at about 18 or 20 miles per hour, pulling a train consisting of a freight car partly loaded with scrap iron and a caboose; the other engine, No. 76, was engaged in switching freight cars at a brick yard near to and east of the point of collision, and had come almost to a standstill on the main track, when struck by engine No. 417.

That portion of appellant's railway was equipped with automatic block signals; there were two of these, located on the south side of the track and governing eastbound traffic in the vicinity of the place of accident, one being 3,600 feet west of the place of accident, and one exactly at the point of collision; both of these showed "red" at the time appellant's engine No. 417, in charge of George Miller, appellant's engineer, approached them, which designation signified "stop" for east-bound traffic.

On the morning of the day of the accident, engine No. 417 started west from Lafayette, Indiana, hauling an empty freight car and a caboose, the train crew consisting of the engineer, conductor, fireman and two brakemen, and a gang of section men, all in the employ of appellant, consisting of appellant's track supervisor, three section foremen and 11 laborers.

Work train extra No. 417 had no other work to do than to gather up, load and transport this scrap iron on the day of the collision; in so doing, on its westward movement, it picked up a second freight car; it loaded

the first car with railroad scrap collected on said westbound movement at nine different stations along appellant's railway, including State Line, Indiana; at the latter point, which the work train reached shortly before 4 p. m. the same day, this car of scrap had been completely loaded, and it was set out by said train and left by it temporarily at State Line, Indiana, to be picked up in its loaded condition and transported by a later train to appellant's reclamation department at Decatur, Illinois.

The second car was partly loaded that day with scrap iron by the time the work train reached State Line; but, not being ready for further transportation to its destination at Decatur as a fully loaded car, it was retained in the work train, and returned with it to Lafayette; on a subsequent day, the load was completed and ultimately went forward to Decatur, to the reclamation plant.

The work train finished doing work that day at State Line, about 4 o'clock p. m. and started back to Lafayette; on the return trip, the work train gang did no active work between State Line and Lafayette, nor was it appellent's intention that they should; all that this train was doing on the return trip was getting back to Lafayette; the engine hauling the train eastbound was the same that hauled it westward that day; the crew, the sectionmen and foremen, were the same as when the train left Lafayette; the same track supervisor was in charge of the sectionmen, whose time would not be up until they arrived at Lafayette; their pay was not earned until they reached the latter point.

The decedent's duties required him, among other things, to fire the engine; he was acting under the engineer, who was upon the engineer's seat, at the time of the collision and was killed; the decedent was caught and crushed between the head of the boiler and the end

of the tank on a connecting gangway where a fireman usually does his work in firing the engine; he was pinned in a position north of the fireman's seat box; he lived for about 45 or 50 minutes, when he died as a result of his injuries.

It is appellee's contention that the work train, on its trip from Lafayette to State Line, while engaged in collecting, loading and transporting railway scrap iron destined for appellant's reclamation plant at Decatur, Illinois, was engaged in interstate commerce, and that it was immaterial, so far as concerns appellant's liability, whether the collision occurred on the west-bound or east-bound portion of the trip; that both constituted one complete movement of the work train, which was intended to return its crew and section gang to Lafayette the same day. This was the theory of both paragraphs of complaint. Appellant contends that the facts averred and proved do not sustain the theory of the complaint, and that they show that appellee's decedent was not engaged in interstate commerce while loading the scrap iron, and that, even if he was, the trip back to Lafayette was a separate and distinct trip from the one going west, the train moving under a different classification, and with different wheel reports. It is conceded, however, that the train and the men upon it were the same on both, that the same conductor made wheel reports of the train, going and returning, that the time of the sectionmen did not end at State Line but at Lafayette, and that the work train had no work to do on its return trip except to get back to Lafayette.

Appellee further contends that the collision was due to the respective engineer's negligence, the one in running past the semiphore signal lights which were set against him, and the other in failing to protect his train while on the main track by warning the on-coming work train, and that, even if the decedent had been negligent,

the only effect of such negligence, under the federal Employers' Liability Act, would be to reduce the damages. Appellant contends that, it clearly appearing that the decedent's place as fireman was on the side of the engine next to the block signals, it was his primary duty to observe them, and failing so to do, he was guilty of contributory negligence which should preclude a recovery.

We confess the difficulty which we have, under the circumstances of this case, and under the authorities cited, to determine whether appellee's decedent was engaged in interstate commerce at the time he was killed. The lines of distinction are sometimes so fine that they are difficult to perceive.

We have examined the numerous authorities cited by appellant to sustain the different phases of its proposition that the decedent was not engaged in interstate commerce. Briefly stated: In *Illinois Central R. Co.* v. *Behrens* (1914), 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C 163, the injured man was engaged in moving intrastate cars.

In *Erie R. Co.* v. *Welch* (1916), 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319, the injured man, a yard conductor, was going from the yard where he had been locating interstate cars, to the office.

In *Shanks* v. *Delaware, etc., R. Co.* (1915), 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C 797, and in *Minneapolis, etc., R. Co.* v. *Winters* (1916), 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B 54, the injured were employed in machine shops which repaired both interstate and intrastate cars.

In *Chicago, etc., R. Co.* v. *Harrington* (1916), 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941, cars of coal had reached their destination, and were afterward being moved to the coal bins, when the accident occurred. *Lehigh Valley R. Co.* v. *Barlow* (1917), 244 U. S. 183, 37

Sup. Ct. 515, 61 L. Ed. 1070, and *Schauffele* v. *Director General* (1921), 276 Fed. 115, present substantially the same circumstances.

In *Illinois Central R. Co.* v. *Rogers* (1915), 221 Fed. 52, the injured party was cleaning stencils for the purpose of marking cars.

In *Chicago, etc., R. Co.* v. *Chinn* (1923), 86 Ind. App. 646, 137 N. E. 885, in which certiorari was denied by the United States Supreme Court, 263 U. S. 716, 44 Sup. Ct. 137, 68 L. Ed. 521, the employee was engaged in repairing car scales to be used indiscriminately in weighing interstate and in intrastate shipments and he was fatally injured while going to the office for his railroad mail.

In *Kozimko* v. *Hines* (1920), 268 Fed. 507, the employee was going to work on a crane to be used in unloading coal for later use because of a threatened strike.

In *Southern R. Co.* v. *Pitchford* (1918), 253 Fed. 736, the employee was cleaning and icing interstate and intrastate cars, the court saying "not so engaged as to be practically a part of it."

In *Illinois Central R. Co.* v. *Cousins* (1916), 241 U. S. 641, 36 Sup. Ct. 446, 60 L. Ed. 1216; *Delaware, etc., R. Co.* v. *Yurkonis* (1915), 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397; and *Minneapolis, etc., R. Co.* v. *Nash* (1916), 242 U. S. 620, 37 Sup. Ct. 239, 61 L. Ed. 531, the employees were mining coal; and in *McLeod* v. *Southern Pacific R. Co.* (1924), 299 Fed. 616, the injured employee was mining rock.

In *Hudson, etc., R. Co.* v. *Iorio* (1917), 239 Fed. 855, the employee was engaged in storing rails for future use.

In *Alexander* v. *Great Northern R. Co.* (1916), 51 Mont. 565, 154 Pac. 915, L. R. A. 1918E 852, in which a writ of error was dismissed, 246 U. S. 276, 38 Sup. Ct. 237, 62 L. Ed. 713, the conductor in charge, who

was injured, was on a branch line, wholly within the state, and loading cars with ties to be placed on a siding and moved by other trains to treating plant within the state.

In *New York Central R. Co.* v. *White* (1916), 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D 1, Ann. Cas. 1917D 629, the injured was a night watchman guarding tools to be used in building a depot.

In *Raymond* v. *Chicago, etc., R. Co.* (1917), 243 U. S. 43, 37 Sup. Ct. 268, 61 L. Ed. 583, the employee was engaged in cutting a tunnel.

In *Illinois Central R. Co.* v. *Peery* (1916), 242 U. S. 292, 37 Sup. Ct. 122, 61 L. Ed. 309, there were two separate revenue producing trips, the employee on the return trip, when injured, being engaged in gathering up intrastate freight.

In *Chunes* v. *Duluth, etc., R. Co.* (1923), 292 Fed. 153, the employee had left the snow shovel which had been employed in cleaning track for interstate commerce, and was taking local freight train back.

In *Fenstermacher* v. *Chicago, etc., R. Co.* (1925), 309 Mo. 475, 274 S. W. 718, in which certiorari to the United States Supreme Court was denied (see 269 U. S. 576, 46 Sup. Ct. 102, 70 L. Ed. 37), the injured employee was helping to load telephone poles at Altamount, Missouri, to be hauled to Trenton, Missouri, there unloaded, and afterward used in repairing lines used in interstate commerce.

In *Myers* v. *Chicago, etc., R. Co.* (1922), 296 Mo. 239, 246 S. W. 257, in which certiorari to the United States Supreme Court was denied (see 261 U. S. 624, 43 Sup. Ct. 519, 67 L. Ed. 832), a section hand was injured while working in burning a fire guard along the track.

In each of the foregoing cases, it was held that the injured employee was not engaged in interstate commerce. But, as it seems to the court, these cases are to

be distinguished from the instant case, in that, in none of them was the employee engaged in loading any kind of freight for the purpose of its transportation in interstate commerce. Here, the scrap iron, whether gathered at one station or nine, was being loaded for the purpose of its transportation eventually to a destination in the State of Illinois. One loading or unloading an interstate shipment is engaged in interstate commerce. *Baltimore, etc., R. Co.* v. *Burtch* (1924), 263 U. S. 540, 44 Sup. Ct. 165, 68 L. Ed. 433. Such shipment was none the less interstate because of the fact that it belonged to appellant. *Chicago, etc., R. Co.* v. *Wright* (1916), 239 U. S. 548, 36 Sup. Ct. 185, 60 L. Ed. 431.

It is apparent, from the averments of the complaint, and from the evidence, that the ultimate destination of the car of scrap was Decatur, Illinois, outside the State of Indiana, and the fact that it was changed from one train to another at State Line, and, for that purpose, was placed on the side track at State Line, could not change the character of the shipment. *Philadelphia, etc., R. Co.* v. *Hancock* (1920), 253 U. S. 284, 40 Sup. Ct. 512, 64 L. Ed. 907; *Baltimore, etc., R. Co.* v. *Settle* (1922), 260 U. S. 166, 43 Sup. Ct. 28, 67 L. Ed. 189; *Hughes Bros. Timber Co.* v. *State of Minnesota* (1926), 272 U. S. 469, 47 Sup. Ct. 170, 71 L. Ed. 259; *Great Northern R. Co.* v. *Otos* (1915), 239 U. S. 349, 36 Sup. Ct. 124, 125, 60 L. Ed. 322.

The mere fact that the designation of the train was changed for its return trip did not change its character as an interstate train. Except the car of scrap which it left at State Line after it was loaded, it was the same train, with the same cars, the same engineer and fireman, and the same working force that had loaded the car, all returning to the base from which they started in the morning. The move-

ment west to State Line, and back to Lafayette was one continuous operation in interstate commerce. *Erie, etc., R. Co.* v. *Winfield* (1917), 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B 662; *Director General* v. *Ronald* (1920), 265 Fed. 138; *Director General* v. *Bennett* (1920), 268 Fed. 767.

Appellant contends that the evidence shows that the decedent was guilty of contributory negligence in that, the three signals with lights indicating danger were on his side of the engine as it was backing east, and that it was negligence for him to fail to heed the warning and to notify the engineer. But the decedent's duties as fireman required him to fire the engine, and the place where he was found in the wreck of the engine and its tender was such that the jury might reasonably infer that he was, at the time of the collision, engaged in firing, and that he was not, for that reason, at the fireman's seat on the engine.

Appellee's decedent, as appears by the evidence, was 30 years of age, and had an earning capacity of from $7 to $10 per day, and, for the past three or four years, had average earnings of between $2,000 and $3,000 per year. His life expectation was 35.33 years. He left surviving, his widow, and five minor children, ranging in age from 10 months to seven years. The damages, $25,000, as fixed by the jury, were apportioned, $6,000 to the widow, and to the children in the order of their ages from the youngest to the oldest, $4,200, $4,000, $3,800, $3,600 and $3,400. The damages recoverable under the federal Employers' Liability Act are not controlled by the state law. Under such circumstances, the jury's verdict for $25,000 will not be disturbed. *Baltimore, etc., R. Co.* v. *Berdon, Admr.* (1924), 195 Ind. 265, 145 N. E. 2, 150 N. E. 407; *Jackson, Rec.,* v. *Atwood, Admx.* (1923), 194 Ind. 56, 140 N. E. 549.

We have carefully examined the instructions, both those given and those tendered and refused, and we hold that the jury was well instructed as to the law governing the case, and that it did not err in its refusal of instructions tendered.

The questions considered above pertain to the respective rulings of the court assigned as error, in which we find no reversible error.

The judgment is affirmed.