SQUIBB *v.* ELGIN, JOLIET & EASTERN RAILWAY
COMPANY, INC.

[No. 15,198.   Filed June 22, 1934.]

*William J. McAleer, Francis J. Dorsey, James J. Clark,* and *William L. Travis,* for appellant.

*White, Wright & Boleman, Knapp, Beye, Allen & Cushing, Joseph L. Earlywine,* and *Paul R. Conaghan,* for appellee.

SMITH, P. J.—Appellant brought this action before the Industrial Board for the adjustment of compensation under the Workmen's Compensation Act of 1929 for personal injuries received by him as the result of an accident which occurred on December 20, 1932, while in the employ of appellee.

No answer to the application was filed by appellee, but an answer of general denial is deemed to have been filed.

The cause was first submitted to a single member of the Industrial Board who denied compensation; and, upon application for review by the full board, a finding and an award was made on the eleventh day of January, 1934, dismissing the application for want of jurisdiction. That part of the finding and award pertinent herein is as follows:

"And the full Industrial Board having heard the argument of counsel, having reviewed the evidence and being duly advised therein now finds that on December 20, 1932, plaintiff was in the employ of the defendant at an average weekly wage in excess of $30.00; that plaintiff was employed as a switchman in the train service; that on December 30, 1932, plaintiff became disabled."

ORDER.

"It is therefore considered and ordered by the Full Industrial Board of Indiana that plaintiff's application for the adjustment of a claim for compensation, filed on May 18, 1933, should be, and the same is hereby dismissed for lack of jurisdiction and plaintiff shall pay the costs of this proceeding.

"Dated this 11th day of January, 1934.

From this award, appellant appealed to this court, assigning as error that the award of the Full Industrial Board is contrary to law.

There are two questions presented in this appeal: (1) Was appellant at the time of his injury engaged in train service; and (2) was appellant at the time of his injury engaged in interstate transportation, or in work so closely related thereto as to be practically a part of it within the purview of the Workmen's Compensation Act of Indiana?

Section (2) of the Workmen's Compensation Act provides in part, "This act shall not apply to railroad employees *engaged in train service.*" Section (19) of the act provides as follows:

"This act, except section 66, shall not apply to employees engaged in interstate or foreign commerce, nor to their employers, in case the laws of the United States provide for compensation or for liability for injury or death by accident of such employees."

The Industrial Board found that appellant was employed as a "Switchman in the train service." There being no conflict in the evidence, the questions, whether the appellant was engaged in train service, or in interstate transportation, or work so closely related as to be a part thereof, are questions of law, and are not properly found as facts, and must for the purpose of the questions under consideration be ignored; and the sufficiency of the finding to support

the conclusions of law reached by the board must be determined from other facts found. *Walker* v. *Chicago, Indianapolis and Louisville Railway Company* (1917), 66 Ind. App. 165, 171, 117 N. E. 969.

We deem it important at this time to set out a summary of the facts as conclusively shown by the evidence. Appellant was employed in the capacity of a switchman at the Gary plant of the Gary division of appellee railroad intermittently from October 30, 1918, to December 20, 1932, on which last date he was injured. He testified that he went to work at 3 p. m. of that day and worked until 6 :30, a short time after he was hurt; that about 6 o'clock p. m. the engine was pulling cars of coke from the oven at the company's plant toward the scale for the purpose of weighing them; that in this operation they usually, and did at this time, cut off the engine and placed it at the back of the string of cars for the purpose of shoving them across the scale; that he was riding seven cars back from the engine, and got off at the switch to get the engine as it ran around the cars; that there he stepped upon a piece of coke which rolled under his foot, and fell backward, hitting his head upon a rail, by reason of which fall he was injured as set out in his application; that at that time the crew of the switch engine consisted of a fireman, engineer, conductor, and two switchmen, one of which was appellant; that, after these cars were weighed, in which operation appellant assisted, they were put in the coke yard, this being a local movement entirely within the switchyard; that, after weighing these cars, appellant continued to work for a few minutes, and the cars were taken to what appellant termed "the G-yard," about a mile from where they were weighed; that on the way some more cars were picked up and taken along; but appellant did not assist in the handling of these cars.

Appellant was the only witness who testified in the case as to the accident, and the facts relating to the same.

Upon cross-examination, he said that, at the time of the accident, the cars were going to the scales loaded with coke which was going to the coke yard. He further said, in response to the question, "Where does it go from the coke yard?", "Some of it goes to South Chicago, some of it goes up for the furnaces." He also testified that, at the time of the injury, he was engaged in miscellaneous switching, and all of his work was up at the coke ovens and in the switchyard; that the nature of his work was switching cars and working on a switch engine.

Upon redirect examination, in response to this question, "Mr. Squibb, these cars that you were handling at the time were just a local movement in the yard and the yard only?", he answered, "Yes." Then, to the question, "Do you know whether or not, if you had any orders with respect to the movement of these cars?", he replied, "Nothing only put them in B. yard." The coke plant is located within the switching yard. Appellant said he took the cars over and weighed them, and put them on another track; that he did not know whether these cars went any place after that or not, and did no know how long they remained after they were put there; that he did not assist in making any delivery to any connecting railroad, had no waybills for them; and that it was just a local switching movement within the yard.

This is substantially all the evidence in the case, except that concerning his injuries, which we do not deem necessary to set out.

It is apparent that appellant was not engaged in train service within the meaning of section (2) of the Work-

men's Compensation Act of 1929. The evidence conclusively shows that he was engaged exclusively in switching cars from one part of the local yard to another, and at no time was he engaged in train service within the common acceptance and meaning of the term. We think that this statute should be construed to include railway employees who are actually engaged in the movement of trains, which means a connected line of cars or carriages on a railroad being transported from one terminal to another, and does not mean a mere movement of cars in a switch yard either for the purpose of making up trains, or placing them in one part of the yard from another. It would be a stretch of imagination to hold that appellant, in the act of switching at the time of his injury, while performing his duties as a switchman, should be held to be engaged in "train service," and thus to exclude him from the provisions of the Workmen's Compensation Act.

Appellee in its brief has referred to cases defining train service and as to what constituted a train. Most of these cases have to do with the Federal Safety Appliance Act; however, the case of *Detroit City Ry.* v. *Mills et al.* (1891), 85 Mich. 634, 48 N. W. 1007, is quoted as stating that a train is a "continuous or connected line of cars or carriages on a railroad." This quotation is taken from a Federal case cited by appellee in its brief. Webster's Dictionary is quoted as defining a train as a "connected line of cars, etc., on a railroad." There is no substantial similarity between the ordinary train service of a railroad company and switching operations in its yards; at least no such similarity as to justify the conclusion as a matter of law that they are the same. *Lynch* v. *Great Northern Ry. Co.* (1910), 112 Minn. 382, 128 N. W. 457.

We hold that appellant, being a switchman employed

in a switch yard, and in the business of switching cars, was not engaged in train service, and, as far as section (2) of the Workmen's Compensation Act is concerned, he is within the meaning of the act and entitled to compensation.

The Industrial Board did not find, or conclude, in its award that appellant was engaged in interstate commerce, but appellee has raised that question, and says that the facts as found by the board and the evidence shows that appellant was engaged in interstate commerce at the time he was injured and not entitled to compensation because of section (19) *supra,* of the Act. (Burns Ann. St. Supp. 1929, sec. 9464; Baldwin's Ind. St. 1934, sec. 16395.)

In order for appellant to recover compensation, the burden is upon him to show, which he has done, that he comes within the compensation act; hence the burden is upon him to show that he was not engaged in train service or interstate transportation at the time of his injuries. *Chicago, etc., R. Co.* v. *Turpin* (1924), 82 Ind. App. 78, 82, 145 N. E. 316; *Walker* v. *Chicago, Indianapolis and Louisville Ry. Company, supra,* page 173.

The facts being undisputed in this case, the question whether the appellant was engaged in interstate transportation at the time of his injury is a question of law. In determining this question, we must have in mind the particular thing he was actually doing at the time of his injury. Our court, in the case of *Walker* v. *Chicago, etc., R. Co. supra,* on page 172, said:

"As pertinent to a correct determination of the question under consideration, the United States Supreme Court, in the case of *New York, etc., R. Co.* v. *Carr* (1915), 238 U. S. 260, 264, 35 Sup. Ct. 780, 781, 59 L. Ed. 1298, 1300 said: '*Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the*

*injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or necessary incident thereof.'* "

Appellant at the time of the accident in the instant case was not engaged in interstate commerce or doing any act in furtherance thereof, or one which was directly or immediately connected with such business, so as substantially to form a necessary incident thereof. He was engaged exclusively in the local movement of some cars loaded with coke which had been picked up at the coke ovens and which were eventually placed within the railroad yards. His service and employment was exclusively within the yards as switchman, so he could not be said to be engaged in interstate commerce within the meaning of the Workmen's Compensation Act.

The Supreme Court of the United States, in holding railroad employees to be engaged in interstate commerce, was in most instances concerned with the Federal Safety Appliance Acts just as we are dealing here with the Workmen's Compensation Act, with a desire to construe the same liberally to the end that its humane purpose may be accomplished. This has been the rule of construction of our compensation act, and it undoubtedly is also the rule of construction of the Safety Appliance Acts as applied to the employees of railroads when the question of liability thereunder has come before the highest court in our land.

This court, in the case of *Chicago, Milwaukee and St. Paul Railway Company* v. *Chinn et al.* (1923), 86 Ind. App. 646, 137 N. E. 885, cited and quoted from the case of *Cleveland, etc., R. Co.* v. *Ropp* (1921), 190 Ind. 115, 129 N. E. 475, in which our Supreme Court had before it the question of whether an employee was engaged in interstate commerce and said the correct test is "'Was the employee at the time of the injury en-

gaged in interstate transportation or in work so closely related to it as to be practically a part of it?' " See also *Chicago, etc., Ry. Co.* v. *Harrington* (1916), 241 U. S. 177, 36 Sup. Ct. Rep. 517, 60 L. Ed. 941. And then held that, measured by this test, appellee (employee) was not engaged in interstate transportation. In the Chinn case, *supra,* this court said:

> "In *Chicago, etc., R. Co.* v. *Harrington* (1916), 241 U. S. 177, 60 L. Ed. 941, a switchman engaged in shifting coal cars from storage tracks to the company's coal sheds, to be placed in bins and supplied as needed to both intrastate trains and interstate trains, was held not to be engaged in interstate commerce."

The Federal Employers' Liability Acts provide that every common carrier by railroad while engaged in interstate commerce shall be liable for damages to any employee who is injured through its negligence as therein set out, while engaged in interstate commerce. This obviously is the reason for section (19) of our Workmen's Compensation Act, for it limits the exceptions to the cases where the laws of the United States provide for compensation.

Following the rule that the employee must prove that at the time he was injured he was not engaged in interstate commerce, we think that the undisputed evidence in this case shows that he was not so engaged. Appellee contends that the *Walker case, supra,* determined the question as to whether appellant was engaged in interstate commerce at the time of his injury in its favor. The Walker case is clearly distinguishable from the instant case for, in the former, appellant was clearly aiding the transportation and movement of a train engaged in interstate commerce. The evidence therein supported that contention. In the instant case, there was no movement of any train or cars in interstate commerce; on the contrary, the evidence discloses that

it was a local movement of cars wholly within the switching yard from one point therein to another. Appellee contends that the statement of appellant in his testimony upon cross-examination, "Q.: Where does it go from the coke yard;" "A.: Some of it goes to South Chicago; some of it goes up to the furnaces." shows that he was engaged in interstate commerce. This statement does not so show, and besides did not have reference to the particular cars being handled at the time, but was in the nature of a general statement.

In the case of *Chicago, etc., R. Co.* v. *Harrington, supra,* the United States Supreme Court had under consideration a case where the employee was a switchman and was moving cars of coal from a storage track to the coal shed. The court said:

".  .  .  it is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he (meaning the employee) would be so engaged after his immediate duty had been performed. That duty was solely in connection with the removal of the coal from the storage tracks to the coal shed, or chutes, and the only ground for invoking the Federal act is that the coal thus placed was to be used by locomotives in interstate hauls."

In the instant case, at the particular time of the injury, appellant was engaged in the weighing of cars of coke, which had been "picked up" before from the coke ovens. The evidence shows that they were placed in the yard. It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would so engage thereafter, nor is it important that these cars were later to be used in interstate hauls; the question being, What was he doing at the time of his injury?

The uncontradicted evidence in this case shows that the appellant was not engaged in train service nor was

he engaged in interstate transportation within the meaning of the Workmen's Compensation Act; that the operation of switching these cars for the purpose of weighing them was not so closely connected with interstate transportation as to be controlled by the Federal Employers' Liability Act; that he received his injuries due to an accident arising out of and in the course of his employment.

The award of the Industrial Board is contrary to law, and the same is hereby reversed with directions to the Industrial Board to set aside the order of dismissal, and to reinstate the case, and for such further proceedings as are necessary, not inconsistent with this opinion.