Frederick H. **BRUEMMER**, Plaintiff-Appellant,

v.

The **CLARK EQUIPMENT COMPANY**, Defendant-Appellee.

No. 14616.

United States Court of Appeals Seventh Circuit.

Jan. 26, 1965.

Joseph D. Anderson and Patrick & Anderson, South Bend, Ind., for appellant.

Arthur A. May, George N. Beamer, Jr., and Crumpacker, May, Levy & Searer, South Bend, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff Frederick H. Bruemmer, a citizen of Indiana, brought this diversity action against defendant The Clark Equipment Company (defendant), a Michigan corporation, and Brown & Kerr, Incorporated (Brown), an Illinois corporation, for damages sustained when plaintiff fell through a hole in the roof of a building owned by defendant.

The district court granted defendant's motion for summary judgment, pursuant to Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A., and plaintiff appealed. Subsequently, plaintiff and Brown proceeded to trial where judgment was rendered in favor of Brown. The instant appeal is concerned only with the granting of defendant's motion for summary judgment.

On March 24, 1955, defendant entered into a contract with The Austin Company (Austin). Austin agreed to provide any and all services required for the design and construction of defendant's new facilities, extension to or remodeling of present facilities or such other work as might be mutually agreed upon within the United States and Canada.

On October 29, 1958, pursuant to this contract, defendant authorized Austin to design, engineer, purchase materials for and construct a manufacturing plant and office building at Michigan City, Indiana.

On December 3, 1958, Austin entered into a subcontract with Brown for the construction of the roof on the plant.

On January 29, 1959, plaintiff, while in the employ of Austin, fell through a hole in the roof and sustained the injuries complained of in this suit.

The motion for summary judgment by defendant was submitted to the district court on the basis of the pleadings, the contract between defendant and Austin, the subcontract between Austin and Brown and an affidavit of F. William Felden, Jr., Manager of Properties for defendant.

The issue presented on appeal is whether there is a genuine issue of material fact as to whether Austin was an independent contractor or agent of defendant or, in the alternative, whether the Indiana Dangerous Occupations Act of 1911, Ind.Ann.Stat. §§ 20–301 through 20–307 (Burns' 1950), prescribes a nondelegable duty which defendant owed to plaintiff.

I

Plaintiff contends that Austin was an agent or servant of defendant, not an independent contractor, and therefore defendant is liable for the alleged negligence of Brown alleged to have caused plaintiff's injuries.

The contracts and affidavit offered in support of the motion for summary judgment demonstrate the following.

Defendant is not involved in the construction or contracting business and does not erect buildings of any kind.

Austin is a company of engineers and builders engaged in the engineering and construction of major commercial and industrial buildings and plant facilities. It may be referred to as a "package builder" in that it handles all phases of the production of a finished plant facility. It designs, engineers and constructs the facility and, when completed, hands over the keys to the owner. Austin advertises this as the "Austin method" and it differs from the usual practice in the industry where the owner has a separate firm prepare the plans and specifications and then solicits construction bids from the industry at large.

The contract between defendant and Austin provided that consideration was to be on a cost-plus basis. Austin was to comply with the Workmen's Compensation Laws and carry necessary insurance covering the work in progress by the builder.

The work authorization order from defendant to Austin provided that Austin was to design, engineer and construct a manufacturing plant and office. The only specification made by defendant in this authorization was the number of square feet to be included in the facility.

Austin entered into the contract with Brown for roofing the plant.

All the construction work was performed by Austin or its subcontractors. Austin maintained a job superintendent and supervisors on the job site during the entire period of construction. It did all the hiring and firing of construction employees, except that done by the subcontractors.

All tools and equipment used in the construction of the plant were the property of Austin or its subcontractors, with the exception of one or two pieces of heavy earth moving equipment owned by defendant.

The construction site was in the complete possession and control of Austin and its subcontractors at all times during the construction period.

Defendant exercised no control over the method or means of constructing the plant. It gave no directions to any employee of Austin or Austin's subcontractors. It did not gauge the steel, test the concrete mix, take field measurements, attempt to coordinate the various trades, give directions to any one concerning the order of putting the building together or in any other way supervise or direct the construction of the building.

■ On the basis of the above facts, we hold that Austin was an independent contractor as a matter of law and there was no material issue of fact presented to the district court on this point. See

Prest-O-Lite Co. v. Skeel, 182 Ind. 593, 596–598, 106 N.E. 365 (1914); Marion Shoe Co. v. Eppley, 181 Ind. 219, 104 N.E. 65 (1914); and City of Gary v. Bontrager Construction Co., 113 Ind.App. 151, 47 N.E.2d 182 (1943).

## II

Plaintiff contends, in the alternative, that assuming Austin is an independent contractor, defendant is liable under Indiana's Dangerous Occupations Act of 1911, Ind.Ann.Stat. §§ 20–301 through 20–307 (Burns' 1950).[1] This is a criminal statute which provides that a violation is a misdemeanor and upon conviction a person shall be fined not less than ten dollars and not more than five hundred dollars. Ind.Ann.Stat. § 20–305 (Burns' 1950).

Plaintiff argues that a violation of this statute constitutes negligence *per se*, citing Prest-O-Lite Co. v. Skeel, supra, 182 Ind. at 600, 106 N.E. 365,[2] and that the violation of a statute which imposes a specific duty upon a person subjects that person to liability for tortious acts of independent contractors, citing Prest-O-Lite, Ibid; Stewart v. Huff, 105 Ind.App. 447, 453–454, 14 N.E.2d 322, 325–326 (1938); and 23 A.L.R. 989, fn. 3.

We find Indiana decisions construing this act to be dispositive of this question.

The Indiana Supreme Court in Leet v. Block, 182 Ind. 271, 106 N.E. 373, 20 A.L.R. 654 (1914), a case brought under Section 20–304 of the Act, stated:

"Does the act of 1911 impose on the owner and contractor such duties of testing and inspecting as to deprive each of them of the independent contractor defense? We are of the opinion that the question must be answered in the negative. *The act evinces no legislative intent to impose a duty of testing and inspecting appliances, except on the particular owner, contractor, or subcontractor who has 'charge of' or is 'responsible for' the work, etc., in question.* While the act does materially change the common-law duties of the employer and impose on him greater obligations in relation to the safety of employés, it was not the legislative purpose to make the owner liable for an injury occurring to an employé of a contractor or subcontractor because of the latter's negligence, in cases where the owner lets a contract for the particular work, without reserving any control over the manner of the work or the character of appliances used. *It was the purpose of the enactment to fix a higher standard of care on the person having the particular work in charge, whether such person be owner, contractor, subcontractor, or other person, but the language of the statute, considered as a whole precludes the theory of any intent to eliminate the doctrine of independent contractor.*" (Emphasis added.) Id. at 274, 275, 106 N.E. at 374.

Accord, Bedford Stone & Construction Co. v. Hennigar, 187 Ind. 716, 121 N.E. 277 (1918); and Switow v. McDougal, 184 Ind. 259, 111 N.E. 3 (1916).

Plaintiff contends these cases apply only to Section 20–304 of the Act and do not control interpretation of Sections 20–301 through 20–303. We disagree.

Only Section 20–304 contains the following language: " * * * and, generally it shall be the duty of all owners, managers, operators, contractors, subcontractors, and all other persons *having charge of, or responsible for,* any work, mechanism, machinery, appliance, building, factory, plant, means, employment or business of whatsoever nature involving risk or danger to employees, or to the public, to use every device, care and precaution which it is practicable and

---

1. The relevant parts of this statute are set out in Appendix A to this opinion.

2. Prest-O-Lite involved the violation of a city ordinance requiring a permit from the building inspector in specified instances and not the Indiana Dangerous Occupations Act.

possible to use for the protection and safety of life, limb and health * * *." (Emphasis added.) The italicized portion of this language was relied on by the Indiana Supreme Court in its decision in Leet.

██ It seems clear to us from the previously quoted language in Leet, that the court was interpreting the Act of 1911 in its entirety, not merely Section 20–304, and intended its holding to so apply. Further, we conclude that the broad and inclusive language of Section 20–304, quoted above, indicates a legislative intent that the entire act was to apply only to persons "having charge of, or responsible for" the specified dangerous occupations.

We hold that no genuine issue of material fact is presented by this contention of plaintiff. We further hold that no issue is presented, as urged by plaintiff, as to whether defendant was itself guilty of negligence which proximately caused plaintiff's injuries.

The district court did not err in entering the summary judgment appealed from and such judgment is affirmed.

Affirmed.

## APPENDIX A

Plaintiff's complaint alleges violations of Sections 20–301 through 20–304 inclusive. The title of the act reads:

"An act to protect life, defining dangerous employment, providing for the safety of the public and persons employed in dangerous occupations, defining the duties of owners, managers, operators, contractors and other persons conducting, operating, or responsible for business ways, works, plants, machinery, appliances and conditions, providing for temporary flooring, fireproofing, staging, and other appliances in the constructing, maintenance and operation of buildings and other structures and conditions, providing penalties, and repealing all laws conflicting with the same."

The sections relied upon by plaintiff, in pertinent part, are as follows:

"20–301 [4440]. Definition.— Every employer, or person, managing or conducting any business or work or plant in the state of Indiana, of the character mentioned in this act, is for the purposes of this act, conducting a dangerous occupation at the time of such occurrence, and subject to the provisions of this act.

"20–302 [4441]. Buildings with three or more stories—Construction —Protections.—It shall be unlawful for any person, firm or corporation engaged in erecting or having erected any building or structure three [3] stories or more in height, to begin the erection of any floor or story above the second story or floor from the ground or excavation until a flooring, staging or protection shall have been laid or placed on the second tier of beams or story from the excavation or ground level or to continue the erection or construction of such building more than two [2] stories or tier of beams above such flooring or protection. Flooring, staging or protection shall at all times be laid and maintained to within the second story or floor below where workmen are engaged, and, in no instance, shall workmen be employed more than twenty-five [25] feet above any flooring, staging or protection. * * * It shall be the duty of owners, contractors and subcontractors to see and require that the provisions of this act are complied with.

"20–303 [4442]. Staging or scaffolding.—In the construction of any steel, iron, frame or other building having a clear story of twenty-five [25] feet elevation from the ground or excavation, a staging or scaffolding, with closed plank flooring, shall be placed under the whole extent of beams, girders, trusses or joists of such story upon which structural iron workers, carpenters,

masons, or other persons are working, and not more than ten [10] feet below the under side of such beams, girders, trusses or joists. In erecting, constructing, or repairing any wall, chimney, smoke stack, tower, cupola, bridge, framework, dome, arch, water pipe, standpipe, tank, pole, staff, coal bunker, roof, dwelling or structure of any kind whatever thirty [30] feet or more in height, where there are no well-defined stories, sections, girders, joists, beams or trusses crossing or intersecting the same where the employees are working, there shall be staging or scaffolding placed not more than ten [10] feet below where the masons, carpenters, structural iron workers, or other employees are working on such building, walls, or structures aforesaid. Such staging or scaffolding shall be placed and maintained in such manner as to prevent the falling through of such employees or materials, and in such manner that workmen and others having a right to pass under or along or near such structure shall not be injured by the falling of any materials or any workmen. Whenever workmen are employed and are working on any such structures, and are using or working on any staging or scaffolding, swing, hammock or similar contrivance, it shall be the duty of the owner of such structure and all contractors, subcontractors, and employers to maintain at all times that workmen are employed thereon, railings or other devices to make such staging, scaffolding, hammocks, or other devices safe, and if men are working over and above, to keep and maintain a second scaffolding or other device above the one upon which such workmen are employed, so as to prevent any workman from being injured by falling objects from above.

"20–304 [4443]. Materials — Safeguards.—It is hereby made the duty of all owners, contractors, sub-contractors, corporations, agents or persons whatsoever engaged in the care, operation, management, construction, erection, repair, alteration, removal, painting, handling or selling of any building, bridge, viaduct, shop, factory or business of whatsoever kind, or in the erection, repair or operation or management of any machinery, mechanism, or contrivance, or in the transmission, generation or use of any electricity or other power, or in the manufacture, operation, preparation, transportation, production, marketing or use of any dangerous or other appliance, substance, commodity or article, to see and to require that all metal, wood, rope, chains, wires, elevators, gates, gutta percha, minerals, chemicals, explosives, machinery, appliances, ways, works, plants, tools, all contrivances, and everything whatsoever used therein are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, and that all scaffolding, staging, hoists, elevators, false work, or temporary or permanent structures, machinery, appliances, tools, mechanisms and all contrivances used are amply, adequately and properly constructed, to bear all weight and adapted to perform the services and meet the requirements for which they are designed or used with safety, and that they are properly and safely used, operated, handled and maintained, and that all staging and scaffolding, more than twenty [20] feet from the ground, are made safe and secure from swaying, and provided with safeguards so as to prevent the falling of workmen, and that all dangerous machinery, mechanism, contrivances, tools, hoists, elevators and cars are securely fenced, guarded, covered or otherwise protected with safety arrangements and appliances to the fullest extent possible that the operation of such machinery, hoists, elevators, and oth-

er devices and contrivances shall permit, and that all shafts, openings, wells, stairways, floor openings, and similar places or conditions of danger, are inclosed and protected, \* \* and, generally *it shall be the duty of all owners, managers, operators, contractors, subcontractors, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plant, means, employment or business of whatsoever nature involving risk or danger to employees,* or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, cars, engines, machinery, appliances, apparatus, or other devices or materials without regard to additional cost of suitable materials or safety appliances, or safe conditions or operations, the first concern being safety to life, limb and health." (Emphasis added.)