WYLER *v.* LILLY VARNISH CO., INC., ET AL.

[No. 867A41. Filed December 4, 1969. Rehearing denied February 4, 1970. Transfer denied May 11, 1970.]

*Harry A. Wilson, Jr., Howard J. DeTrude, Jr., Kightlinger Young Gray & Hudson* for appellant.

*Emerson Boyd, Locke, Reynolds, Boyd & Weisell* for appellee Freyn Bros., Inc., *Tony Foster, Bingham, Summers, Welsh & Spilman* for appellee Brad Snodgrass, Inc., *James E. Rocap, Jr., Rocap, Rocap, Reese & Young* for appellees, Lilly Varnish Co., Inc., and Foster Engineering Co., Ltd.

WHITE, J.—Appellant, an employee of Citizens Gas & Coke Utility, fell and was injured on the premises of appellee Lilly Varnish Co., Inc., 666 South California Street, Indianapolis, on January 17, 1963. He had gone there to install a gas meter in the basement of a one-story office building then under construction, but nearing completion. This is an appeal from a judgment on a jury's verdict denying him damages for his injuries.

After entering the building and making some measurements in the basement, appellant and his helper climbed the stairs to the first floor and walked out the door through which they had entered. The door opened onto a porch, stoop, or platform on the east side of the building. At that time there was no railing around any part of the platform. At the north end of the platform there were steps leading to the ground. At the south end of the platform there was an air well five feet

wide (east to west), eight feet long (north to south) and ten to thirteen feet deep. Two wooden planks (2 x 10's) were lying over the opening into this well, with one end of the planks resting on the platform at the north end of the well and the other end of the planks resting on the ground at the south end of the well. The planks were covered by a sheet of plastic called Visqueen. There were no railings or barricades or warning signs near the well.

Appellant testified that as he first came onto the premises and approached the building, he saw this Visqueen covering the platform and extending down from the platform to the ground over what he thought was a ramp at the south end of the porch. He also saw the steps at the north end of the platform but he and his helper did not ascend to the platform by either the steps or the ramp. They stepped directly from the ground onto the east side of the platform. Appellant testified that when they left the building, "I thought I would take it easy on my feet instead of jumping off of the platform there—and go down the ramp. . . . I took the way closest to my truck sir." The Visqueen was dirty and he did not see or know that the air well was under it. As he stepped onto the "ramp" he had the sensation of falling and landed at the bottom of the air well, sustaining severe injuries.

An oral stipulation at the trial identified appellee LILLY VARNISH CO., Inc., as the owner, FOSTER ENGINEERING CO. (i.e., the partners doing business by that name) as the General Contractor, FREYN BROS., Inc., as sub-contractor for mechanical work, and BRAD SNODGRASS, Inc., as sub-contractor for heating and air conditioning. All four were made defendants in appellant's suit below for damages for his injuries thus sustained.

At the time of the accident the construction of this air well had been completed except for the permanent covering (a metal grille) which was later placed on top of the opening. The purpose of this air shaft was to provide a fresh air inlet to the building's air conditioning and heating system. When

the system was completed and put into operation, the air descending into the well would pass through louvers in the basement wall into the furnace. Except for these louvers, the walls of the well were of concrete block. The floor was of concrete poured around a drain previously set there by appellee Freyn Bros. The floor had been in about one month at the time of the accident and the walls had been there for an indefinite time. The louvers, installed by appellee Brad Snodgrass, may have been put in as late as the day of the accident or as early as two weeks before that. They formed approximately the whole west wall (or building side) of the air well and when their installation was complete (as it was at the time of the accident) the air well was thereby closed off from the basement for all purposes except the intake of air. No light penetrated from the basement to the air well or from the air well to the basement.

While evidence as to who dug the hole which became the air well and who poured the cement floor and who laid the cement block walls was not as direct and clear as might be desired, it may fairly be inferred that such work was done by the general contractor, appellee Foster Engineering. Except for the time the air well was covered by the scaffolding used by the brick masons in building the exterior wall of the building, the air well was used by the employees of all appellees (except, perhaps, the owner, Lilly Varnish) as a way of entry to and exit from the basement, by means of a ladder placed in the well. Tools, materials and equipment were also taken in and out through this opening.

The purpose of covering the hole with the plastic (Visqueen) was to make the building more comfortable for the workmen by impeding the flow of cold air into the basement. Whether the planks were there merely to support the Visqueen or to prevent people from falling into the well is not clear. The opening being approximately five feet in width, the two planks there the day of the accident obviously could not serve the latter purpose. There was evidence that more

planks had covered the opening at other times, but there was no evidence as to what practice was followed with respect to removal and replacement of planks when anyone used the ladder to enter or leave the basement.

The evidence was uncontroverted that the job superintendent and other general contractor's employees working under his direction placed the planks and Visqueen over the well opening in the first instance and that he acknowledged responsibility for "covering and protecting" the opening.

The evidence was in conflict as to whether the Visqueen also extended over the platform. Also in conflict was the degree of opacity of the Visqueen, particularly as to whether it was dirty. No witness, however, testified that the air well could be seen by looking down through the Visqueen; but it was left uncertain as to whether that was due to opacity of the Visqueen or to want of light in the hole. There was some conflict as to the extent of the sagging of the plastic and as to what such sagging would indicate or should have indicated to persons, such as appellant, when they contemplated stepping onto it.

Appellant's complaint alleges that the owner, appellee LILLY VARNISH CO., Inc., had employed appellees C. Wilbur Foster, George S. Hawke and Charles E. Nourse, d/b/a FOSTER ENGINEERING CO., Ltd. (elsewhere herein referred to as "Foster" or "Foster Engineering") to supervise the erection of the building, which work Foster was doing at the time of the accident. The complaint also alleged that appellee FREYN BROS., Inc., and BRAD SNODGRASS, Inc., were employed by Foster "to assist and construct the building." It further alleged:

"(8) That at said time these defendants, [being all of the appellees] and each of them, acting by and through their said employees, had constructed an air intake hole on the east side of the newly constructed building approximately midway between the north and south end of said building and immediately adjacent to a doorway; and that further, the defendants, without knowledge on the part of

the plaintiff, but well known to themselves, after the excavation of said hole, covered said hole and doorway entrance with an opaque sheeting which rendered the area immediately beneath the sheeting invisible.

"(9) That as a part of his duties in the installation of said commercial meter, the plaintiff was required to and did in fact enter the construction site and while in the process of leaving said building by the doorway on the east side, stepped upon the opaque material and fell a distance of approximately thirteen feet, landing on a concrete floor and sustaining serious injuries as a direct and proximate result thereof, as more particularly hereinafter alleged.

"(10) That the defendants, and each of them, were guilty of the following acts and omissions of negligence, to-wit:

"(a) That the defendants placed an opaque covering across the doorway and area immediately adjacent thereto and invited its use when they knew or should have known that a person using said doorway would likely suffer serious injury as a result of said action;

"(b) That the defendants failed and neglected to place any signs or any warnings of any nature around the doorway and area immediately adjacent thereto to advise or warn other workmen, who were working in the vicinity thereof and using said doorway, that an excavation had been covered up by the opaque material and that the use of said entrance and exitway would likely result in injury.

"(c) That the defendants negligently failed to guard or barricade said opening and excavation when they knew that said entranceway was being utilized by other workmen and when they knew or should have known that the failure to guard or barricade the covered excavation was likely to result in serious personal injuries.

"(d) That the defendants, after covering the excavation and hole with opaque sheeting, negligently left said condition to exist for a considerable period of time when they knew or should have known that other workmen would be working in the vicinity of the excavation and that said action was likely to cause injuries.

"(e) That the defendants failed and neglected to warn or advise the plaintiff of the existence of said excavation and in fact covered the excavation and kept it from the view of the plaintiff, thereby inviting serious personal injuries.

"(f)  That the defendants covered the excavation and entranceway of the doorway with an opaque sheeting and created the impression of a ramp and invited the use of said entranceway, thereby creating a trap for other workmen coming on the premises.

"(g)  That the defendants invited the use of the entranceway on the east side of said building by other workmen in the building when they knew or should have known that said actions were likely to cause injuries and when there were other areas that could have been provided for entrance and exit from the building."

Injuries and damage as the proximate result of the stated negligence were also alleged.

Answers put negligence, contributory negligence, injuries, damages, etc., into issue.  A trial to a jury resulted in a verdict against the appellant and for all appellees.  From an adverse judgment in conformity with the verdict appellant brings this appeal assigning as error the overruling of his motion for new trial.

All appellee-defendants except Foster Engineering, the general contractor, moved for directed verdicts at the conclusion of all the evidence.  All motions were overruled.

The reason given to support the motion to direct a verdict for Lilly Varnish was that there was no evidence it was ever on the job or had anything to do with the project and (as shown by its undisputed answer to an interrogatory) had retained no right of control or supervision over the work. Appellant argued that the owner had not shown "a true independent contractor relationship" which would be necessary to exempt it from liability.  The trial judge made no comment in overruling the Lilly motion.

The motions of both Freyn Bros. and Brad Snodgrass were supported, in part at least, by the argument that there was no evidence that they had constructed the air well.  In overruling these motions the trial judge commented that both these defendant-appellees had used the air well.  (The evidence supports that comment.)

Thereafter appellee Brad Snodgrass tendered, and the court gave, over appellant's objection, the following Instruction No. 8:

> "The theory of Plaintiff's complaint against Defendant Brad Snodgrass, Inc. is that it excavated, constructed, covered and maintained the air intake hole in question and was therefore responsible for the presence and the condition of such hole at the time and place of his alleged injury. The burden is on the Plaintiff to prove to you by a preponderance of the evidence such theory.
>
> "If you find, therefore, that the Defendant Brad Snodgrass, Inc., did not excavate, construct, cover and maintain said air intake hole, then the Plaintiff has not proved such theory and he cannot recover from the Defendant Brad Snodgrass, Inc., because of the presence of or conditions surrounding such hole."

The language of the instruction is peculiar to Indiana jurisprudence[1] and is apparently a vestige of the era of common law issue pleading which should have ended in 1852 with the adoption of the Field Code.[2] That code nowhere mentions the word "theory" nor contains any phrase which is the equivalent of "theory of the complaint."[3] Nor does it contain any express requirement that a complaint must proceed on a definite theory, or that plaintiff can recover only on the theory his complaint pleads. On the contrary, the Indiana version of the Field Code is replete with sections dealing with variances between allegations and proof, amendments, and related matters. "Without doubt it is at odds with the letter and spirit of those code provisions to ascribe to a party some definite legal theory of liability which turns out to be at odds with the merits of the case."[4]

That interpretation of the spirit of the Code has just recently been given very forceful support by the Supreme Court

---

1. *Chicago, T. H. & S. R. Co.* v. *Collins*, 82 Ind. App. 41, 57, 143 N. E. 712 (1924).
2. *Morrison's Southern Plaza Corp.* v. *Southern Plaza, Inc.*, 252 Ind. 109, 17 Ind. Dec. 166, 246 N. E. 2d 191, 198 (1969).
3. *Chicago, etc.* v. *Collins*, note 1, *supra*.
4. 1 Gavit. INDIANA PLEADING AND PRACTICE. § 161, p. 716.

of Indiana in *Morrison's Southern Plaza Corp.* v. *Southern Plaza, Inc.*[5] On the strength of Judge Hunter's opinion in that case it fairly may be said that it is not presently the law in Indiana that "the plaintiff must recover on the theory of her complaint or not at all."[6] And since this presumed and now repudiated rule of law appears to be the basis of the instruction, it is obviously erroneous and should be condemned.

Whatever justification, if any, there may be for holding a plaintiff to a theory of complaint during the pleading stage almost completely disappears once the trial stage is reached. At that stage there remains but one situation in which the plaintiff is bound by, or limited to, the allegations of his complaint. That situation is stated thus in 1 GAVIT, INDIANA PLEADING AND PRACTICE § 161, p. 717:

"Thus it is clearly true that the relevancy of evidence still is determined by the issues raised by the pleadings. Where the issue is clear and unequivocal a party may not, over the adverse party's objection, properly be permitted to prove facts which are irrelevant to that issue, even though they might tend to prove another or different claim or another and different defense than the one clearly presented in the pleadings."

or as stated in *Chicago, etc.* v. *Collins, supra,* (82 Ind. App. at 52):

"To avoid any misunderstanding, it should be stated that where a plaintiff attempts to prove a negligent act or omission other than the one averred in the complaint, a timely and proper objection should be sustained. Thereupon, it becomes the duty of the court, in the interest of justice, to take charge of the situation. The court may permit the complaint to be then amended. If the complaint be amended, then, if the facts warrant, the defendant may claim a surprise and obtain a continuance. That practice will usually prevent a variance and avoid

---

5. Cited *supra* in note 2.

6. See *Chicago, etc., R. Co.* v. *Collins*, cited *supra* in note 1, for a discussion (at p. 53 of 82 Ind. App.) of that statement.

future trouble. *But where the plaintiff's evidence, whatever it may tend to prove, is permitted to be adduced without objection, the defendant may not escape the consequences solely on the ground that there is a mere variance between the proof and the averments of the complaint."* (Emphasis added.)

We believe there was evidence admitted without objection, such as that alluded to by the court in overruling appellee Snodgrass' motion for a directed verdict, from which the jury could have found that said appellee was responsible for the condition of the air well at the time of the injury even though said appellee may not have excavated, constructed, covered, or maintained it. We also accept appellee's assertion that there was no evidence of excavation, construction, coverage, or maintenance of the hole by appellee Snodgrass. Given this situation, the instruction could be said to have been nothing more or less than an attempt to "escape the consequences of [evidence adduced without objection] solely on the ground that there is a mere variance between the proof and the averments of the complaint."

For the reasons stated we condemn the instruction, but are unable to do more than condemn because the appellant's objection wholly fails to state valid "specific objections" thereto, as required by Supreme Court Rule 1-7.[7]

Appellees were successful in excluding evidence by means of what may have amounted to a proper application of the above mentioned rule "that the relevancy of evidence still is determined by the issues raised by the pleadings,"[8] which is to say, by the theory of the case. The length of the record

7. The objection reads:
"The Plaintiff objects to the giving of Defendant Brad Snodgrass' Instruction No. 8 for the reason that said Instruction in effect tells the jury what the Plaintiff's theory of the case is and incorrectly states said theory. This is actually a motion in the form of a motion for a directed verdict. It is contrary to the Indiana—the Instruction is contrary to Indiana Statute 20-304 and contrary to the common law liability placed upon a contractor or sub-contractor performing work."
8. 1 GAVIT, INDIANA PLEADING AND PRACTICE § 161, p. 717.

and the thickness of appellant's brief have been greatly expanded by his unsuccessful attempts to get his Exhibits No. 2 and No. 4 into evidence. The question of their admissibility has apparently occupied a major portion of the time devoted to this case by counsel and court; yet when fully analyzed from the cold and silent record that question seems to be of less significance than many other aspects of the case. Exhibit No. 2 covers 214 pages of appellant's printed brief and Exhibit 4 covers 36 pages, yet it appears that the only pertinent portions thereof were Article 12 and Article 37 of Exhibit 4. These were parts of the contract of the general contractor (appellee Foster Engineering) with the owner (appellee Lilly Varnish). They became obligations of the sub-contractors (appellees Freyn Bros. and Brad Snodgrass) by virtue of other documents not here necessary to detail. These two Articles read as follows:

Article 12:

"The contractor shall take all necessary precaution for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all times, as required by the condition and progress of the work, all necessary safeguards for the protection of workmen and the public and shall post danger signs warning against the hazards created by such features of construction as protruding nails, hoist, well holes, elevator hatchways, scaffolding, window openings, stairways and falling materials; and he shall designate a responsible member of his organization on the work, whose duty shall be the prevention of accidents. The name and position of any person so designated shall be reported to the architect by the contractor."

Article 37:

### "RELATIONS OF CONTRACTOR AND SUBCONTRACTOR

"The Contractor agrees to bind every Subcontractor and every Subcontractor agrees to be bound by the terms of the Agreement, the General Conditions of the Contract,

the Supplementary General Conditions, the Drawings and Specifications as far as applicable to his work, including the following provisions of this article, unless specifically noted to the contrary in a subcontract approved in writing as adequate by the Owner or Architect.

"The Subcontractor agrees—

"a) To be bound to the Contractor by the terms of the Agreement, General Conditions of the Contract, the Supplementary General Conditions, the Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner."

Appellant's purpose in offering these exhibits is summarized and characterized by these excerpts from his brief:

"Plaintiff offered the exhibit to prove that the Defendant, Lilly Varnish and Foster Engineering Co., had agreed that Foster would have the duty of warning of the existence of the air-well where Plaintiff fell.

"These duties were also assumed by the other two (2) defendants.

\* \* \*

"Thus, pursuant to the contract documents, there was a duty upon all Defendants to warn of the existence of the airwell.

"These Exhibits were offered by the Plaintiff as evidence upon the question of who had the duty of erecting signs warning of the hole and who had the duty of installing barricades around such hole."

Appellant cites several out-of-state cases in support of his contention that these contract documents were admissible for the above purpose over the appellees' objection that the theory of appellant's complaint was that appellees had injured him by commissions of a tort, i.e., they had breached a duty imposed by law, and that appellant could not prove a breach of a duty imposed by contract, and that plaintiff was not a party to the contract.[9]

---

9. This is our composite version of the basic theme of the repeated objections made by the several appellees, none of which objections contains precisely our language.

Except for the fact that Burns IND. STAT. ANN. § 20-304[10] does not expressly mention the posting of danger signs in its enumeration of the duties of owners, contractors, and subcontractors, while Article 12 does, there is little apparent difference between the statute and the Article so far as they purport to prescribe the accident prevention duties of contractors and sub-contractors. In fact, it would seem that § 20-304 imposes a higher standard of care than Article 12 purports to require, except to the extent that Article 12 constitutes the contractor's promise (and, through Article 37 and the sub-contracts which implement it, the sub-contractor's promises) to the owner that the contractor will obey all safety laws—a duty owed to the appellant by virtue of the law irrespective of the contract. But for the promises to obey statutes, Article 12 appears to be no more than a contract to exercise reasonable care. A warning sign at the site of each protruding nail, each hoist, each well-hole, etc., is not required, but only those which, "as required by the conditions and progress of the work . . . [are] necessary safeguards". Even by the authority cited by appellant in support of the admissibility of contract safety clauses in tort action trials, *Larson* v. *Heintz Construction Co.,* 219 Ore. 25, 345 P.2d 835, 849 (1959), "[i]t is for the court and not for the jury, in the first instance, to construe the contract. . . ." And in that case it was not error to exclude the contract because the hazard which caused the accident in that case was not of the class "within the warning provision" of the contract. Here, of course, the well-hole in which appellant's injury occurred was of the class which was within the warning provision of the contract and also of the statute and the common law. Neither, however, imposed an absolute duty on any of the appellees to erect a warning sign at the precise point at which appellant became exposed to the danger of falling into the air-well. As hereinafter indicated, however, we believe that under the statute and the common law the jury instructions

10. The statute is set forth in footnote 15, *infra.*

to which appellant was entitled were as favorable to him as any he might have based on these contract provisions.

Appellant reads much more into these contract provisions than they actually say. In his written argument appellant states that:

". . . the trial court permitted this case to go to the jury with no one knowing who, if anyone, had the duty to warn of the existence of the air-well. The jury had no way to make a finding upon the most important question; who should have warned. As one can readily see from reviewing the evidence, each Defendant was piously asserting that he did not dig the hole; he did not pour the cement in the hole; he didn't cover the hole with two (2) boards. Yet, all Defendants were most anxious to keep the jury from knowing that there were contract provisions whereby each one of them agreed to warn the public of the existence of air-wells and other dangerous areas."

The evidence discloses that the job superintendent, an employee of Foster Engineering, the general contractor, testified that it was his responsibility, as job superintendent, to have the air-well covered and protected. The transcript also discloses a great deal of dispute or difference of opinion, (mostly between counsel but also between some witnesses) as to whether due care required a warning sign at the air-well. However, appellant has not pointed out, and we have not found, any denial by the job superintendent that if due care required a sign its erection and maintenance would not have been within the responsibility which he acknowledged, i.e., "to cover and protect". It may be true that some question which he was not permitted to answer would have, if responsively answered, disclosed with greater specificity his understanding of his responsibility in regard to the erection of warning signs. We have, however, gone beyond the briefs in review of the evidence and have read the bill of exceptions. From such reading we are convinced that as so far as appellee Foster Engineering was concerned there was never any question as to who should erect warning signs, but merely

the question of what signs should be erected and where and when and whether they should be erected.

As to the appellees Foster Engineering and Brad Snodgrass, it is true that they now assert that the evidence does not disclose that their relationship to the air-well was such that on the day of the accident, they should be held responsible for any failure to see that appellant was protected in any way from its hazard. But appellant has failed to point out any question and answer, and we have found none, which substantiates his charge that at the trial "each Defendant was piously asserting that he did not dig the hole . . ." etc. Although some witnesses professed ignorance when asked about who did what work, others gave responsive and informative answers. There seems, however, to have been little attempt to establish such facts. The principle thrust seems to have been directed towards an attempt to establish statutory and contractual duties on the part of all appellees to barricade, post signs, etc., merely because each was an owner, contractor, or sub-contractor and without regard to what work-related connection, if any, each had with the air-well. Such a theory of liability is not supported by either the contract or by the statute. *Leet* v. *Block,* 182 Ind. 271, 106 N.E. 373 (1914), and *Bruemmer* v. *Clark Equipment Company,* 341 F.2d 23 (7th Circ., 1965) both hold that the statute "evinces no legislative intent to impose a duty . . . except on the particular owner, contractor, or subcontractor who has 'charge of' or is 'responsible for' the work, etc., in question." Nor is any such intent evinced in Article 37, *supra,* of the contract documents which required the contractor to bind the sub-contractors to the terms of his contract with the owner, including Article 12, *supra,* respecting safety measures.

The court instructed the jury, as a part of Freyn's Instruction 9, that the "statute applied only to the particular owner, manager, contractors, sub-contractors and other persons having charge of, or responsible for, any work or condition you

may find to have been a proximate cause of the occurrence for which plaintiff sues . . . ." (The correctness of that instruction, *per se*, is not before us because appellant made no objection to it and claims no error here.) That statement is a correct and proper interpretation of the statute. Had the contract provisions herein above quoted, Articles 12 and 37, been in evidence, the sub-contractor appellees would have been entitled to an almost identical instruction so delimiting the application of those articles.

It makes sense that the owner is responsible for the care, or want of care, exercised by persons he employs to make improvements on his land unless he has let "a contract for the particular work, without reserving any control over the manner of the work or the character of appliances used."[11] It also makes sense that the general contractor has the same responsibility with respect to sub-contractors.[12] But it makes no sense that sub-contractors (who probably have no practical or legal power to require the contractor and other sub-contractors to observe safety precautions) should be required to constantly inspect the work of the employees of all other contractors and sub-contractors and to supply their omissions (i.e., put up the barricades and warning signs they fail to erect at hazards they create) and to neutralize the dangerous effects of their negligent workmanship (i.e., secure loose boards, fixtures, etc. and replace defective materials and devices). The cost of avoiding or insuring against such potential liability would be entirely out of proportion to anticipated profits for most, if not all, sub-contractors. Furthermore, chaos would reign supreme on any job on which several sub-contractors with divergent concepts of safety might take seriously their supposed duty to supervise the safety practices of the general contractor and of each other.

All of which leads to the inevitable conclusion that appellant has not been harmed by the refusal of the trial court to

---

11. *Leet* v. *Block, supra,* (182 Ind. at 274).
12. Ibid.

admit these contract documents into evidence. We will not reverse for an error in the admission or rejection of evidence unless the error resulted in harm.[13] *Storckman* v. *Keller,* 143 Ind. App. 43, 237 N.E. 2d 602, 604 (1968), *Perkins* v. *Sullivan,* 127 Ind. App. 426, 429, 143 N. E. 2d 105 (1957).

Appellant asserts error in the court's refusal to give his tendered Instruction No. 17, as follows:

> "I instruct you that until the Plaintiff, Donald Wyler, had notice to the contrary he had the right to assume that the Defendants had used due care in seeing to it that the premises at 550 Abbott Street were not in a dangerous condition."

In *Lincoln Operating Co.* v. *Gillis,* 232 Ind. 551, 557, 114 N. E. 2d 873 (1953), the Indiana Supreme Court said of a hotel guest who had slipped on a slick substance on the bottom of the bathtub: "Until the appellee had notice to the contrary, she had the right to assume that the hotel operator had used due care in seeing to it that the bathtub was not in a dangerous condition." This statement was made in explanation of the court's rejection of the contention that, as a matter of law, the guest owed a duty to inspect the tub before using it. The court in no way suggested that the state-

---

13. This statement is not to be construed as suggesting that such evidence was technically admissible. Both substantively and procedurally these contract obligations may well have been inadmissible. They were promises made to other contracting parties and probably solely for the benefit of the parties and not for the benefit of the public or of any class of persons of which appellant was a member. And the true "theory-of-the-case" was negligence, which is to say, an action for damages for a negligent breach of a duty imposed by law. See the "theory-of-the-case" authorities cited in our discussion, *supra,* of appellee Brad Snodgrass' Instruction No. 8 relative to the theory-of-the-complaint. The possibility exists, however, that promises in public contracts to observe safety precautions may be made for the benefit of the public and may, in the proper case, be admissible to show that a contractor was negligent because he failed to exercise the standard of care required of him by his public contract. The possibility also exists that safety clauses can be included in private construction contracts for the benefit of the public.

ment was an acceptable jury instruction.[14] A proper understanding of the statement requires a proper understanding of "due care". The housekeeping standard which constitutes "due care" in the preparation of a hotel room for a guest may well be quite different from "due care" in housekeeping for the safety of persons invited onto construction sites.

The court gave appellee Freyn's Instruction No. 7, as follows:

"The law does not require that a construction site where work is in progress be made or kept absolutely safe.

"The law does require that reasonable care be used by those undertaking to perform the work. Reasonable care means such care as an ordinary prudent person would use under the same circumstances. The circumstances from time to time may include lesser or greater hazards, depending upon the necessity for preserving reasonable uses of structures, ways and openings at progressive states of construction."

Since this instruction properly informed the jury on the same subject, it was not error for the court to refuse appellant's Instruction No. 17. (Appellant objected to Freyn's Instruction No. 7, and made its giving a ground of his motion for new trial, but waived any error by failing to argue it in his brief. Supreme Court of Indiana Rule 2-17 (h) (i): *Central Ind. Ry. Co.* v. *Mikesell,* 139 Ind. App. 478, 221 N. E. 2d 192 [1965]).

Appellant again urges that he had a right to assume that the premises were safe for his use when he argues that it was error for the court to give Instruction No. 7 submitted by Lilly Varnish and Foster Engineering, as follows:

---

14. "It is not every statement of the law found in a textbook or opinion of a judge, however well and accurately put, which can properly be embodied in an instruction. The processes of reasoning by which a conclusion is reached, if well made, are appropriate to be found either in text or opinion, but rarely, if ever, is it proper to deliver such reasoning to a jury in the form of instructions." *Garfield* v. *State,* 74 Ind. 60, 63 (1881). Also quoted in dissent to *McCague* v. *N.Y.C. & St. L. R. Co.,* 225 Ind. 83, 102, 71 N. E. 2d 569 (1947).

"If you find from the preponderance of the evidence that plaintiff had a choice of ways to descend from the platform in question and you further find from the preponderance of the evidence that the danger, if any, on the way he chose to descend was obvious and apparent so that he knew or in the exercise of ordinary care and prudence should have known that the course he pursued was the more hazardous, then you may find he was guilty of contributory negligence."

Appellant here relies on only that part of his objection to said instruction in which he states: "Plaintiff is only required to act as a reasonable man and it [the instruction] required the Plaintiff to inspect the premises when as an invitee such a duty is not required of the plaintiff."

We do not so understand the instruction, or believe that the jury was likely so to understand it. Appellant had testified that he knew of the steps at the other end of the platform but chose the "ramp" because it was closer to his truck. The instruction required him to do no more than to look where he walked and authorized the jury to find him guilty of contributory negligence if he did not see a danger which was "obvious and apparent". Whether there was, in fact, an obvious and apparent danger in descending by the route appellant attempted to follow or whether the manner in which the hole was covered gave it the false appearance of a ramp safe for walking on, was a contested issue of fact in the trial. We do not believe this instruction suggests that the danger was obvious. The differing testimony of appellant and his helper would permit the jury to choose which of opposite inferences should be drawn as to the appearance of the covering over this air-well. Even were we to be convinced that, as appellant argues, "[h]e could rely upon the assumption that the premises would be safe for his use," this assumption must be understood in the light of appellant's concession that he was required to act as a reasonable man, which is tantamount to acknowledging that he was required to exercise reasonable care for his own safety. *Pfiester* v. *Key,* 218 Ind. 521, 529, 33

N. E. 2d 330 (1941), states "that it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear."

The limits of the duty of appellees with respect to the hazard of stepping onto the covering over the air well was further developed in Instruction No. 11 submitted by Freyn Bros. and given over appellant's objection. This instruction reads:

> "It is a matter of common knowledge that hazards and dangers are present in homes and elsewhere in everyday life, and that hazards and dangers are likely to be greater on a construction site.
>
> "Reasonable care did not require anyone connected with the construction here involved to place or post any barricades or warnings as to any hazardous or dangerous conditions which should have been obvious to or discoverable by a person of plaintiff's age and experience using reasonable care for his own safety."

Appellant's objection included the assertion that the instruction was in conflict with Burns Ind. Stat. Ann. § 20-304.[15] We find that part of the objection to be well taken.

---

15. "It is hereby made the duty of all owners, contractors, subcontractors, corporations, agents or persons whatsoever engaged in the care, operation, management, construction, erection, repair, alteration, removal, painting, handling or selling of any building, bridge, viaduct, shop, factory or business of whatsoever kind, or in the erection, repair or operation or management of any machinery, mechanism, or contrivance, or in the transmission, generation or use of any electricity or other power, or in the manufacture, operation, preparation, transportation, production, marketing or use of any dangerous or other appliance, substance, commodity or article to see and to require that all metal, wood, rope, chains, wires, elevators, gates, gutta percha, minerals, chemicals, explosives, machinery, appliances, ways, works, plants, tools, all contrivances and everything whatsoever used therein are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, and that all scaffolding, staging, hoists, elevators, false work, or temporary or permanent structures, machinery, appliances, tools, mechanisms and all contrivances used are amply, adequately and properly constructed, to bear all weight and adapted to perform the services and meet the requirements for which they are designed or used with safety, and that they are properly and safely used, operated,

As interpreted in *Leet* v. *Block*, 182 Ind. 271, 274, 106 N. E. 373, 20 A. L. R. 654 (1914), and *Bruemmer* v. *Clark Equipment Co.*, 341 F.2d 23, 26 (7th Circ. 1965), that statute imposes duties only "on the particular owner, contractor, or sub-contractor who has 'charge of' or is 'responsible for' the works, etc., in question." But as to *such* "particular owner, contractor, or sub-contractor" it purports to, and does, impose a duty "to require . . . that all shafts, openings, wells, stairways, floor openings, and similar places or conditions of danger, are inclosed and protected . . . ." Appellees

---

handled and maintained, and that all staging and scaffolding, more than twenty [20] feet from the ground, are made safe and secure from swaying, and provided with safeguards so as to prevent the falling of workmen, and that all dangerous machinery, mechanism, contrivances, tools, hoists, elevators and cars are securely fenced, guarded, covered or otherwise protected with safety arrangements and appliances to the fullest extent possible that the operation of such machinery, hoists, elevators, and other devices and contrivances shall permit, and that all shafts, openings, wells, stairways, floor openings, and similar places or conditions of danger, are inclosed and protected, and that all hoists, machinery or mechanism operated other than by hand power, are, when necessary for the safety of persons, employed in or about the same, or for the safety of the general public, provided with a system of communication by means of signals or otherwise, so that, at all times, there may be prompt and efficient communications between the employees and other persons and the operator of the motive power, and that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public or any employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come into contact with the wire or wires, and that dead wires are not mingled with live wires, nor to be strung upon the same support, and the arms or supports bearing live wires are especially designated and distinguished by a color or other designation which is instantly apparent, and that live electrical wires carrying a dangerous voltage are strung at such distance from the poles or supports as to permit repair men to freely engage in their work without danger of shock; and, generally it shall be the duty of all owners, managers, operators, contractors, subcontractors, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plant, means, employment or business of whatsoever nature involving risk or danger to employees, or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, cars, engines, machinery, appliances, apparatus, or other devices or materials without regard to additional cost of suitable materials or safety appliances, or safe conditions or operations, the first concern being safety to life, limb and health. [Acts 1911, ch. 236, § 4, p. 597.]"

have cited no authority and have made no express argument that this apparent statutory duty is illusory and applies only to "shafts, openings, wells," etc., which are not obvious to or discoverable by a person of plaintiff's age and experience using reasonable care for his own safety.

One appellee attempts to justify the instruction on the basis of the clause which limits the general duty imposed by the statute ("to use every device, care and precaution . . . practicable and possible . . . for the protection and safety of life, limb and health") in these words, "limited only by the necessity for preserving the reasonable efficiency of such . . . work. . . ." No reference is made to any evidence indicating how the inclosure and protection of the well in question *at the time of the accident* would have interfered with the reasonable efficiency of the work.

Another appellee cites two federal court products liability cases to the effect that there is no duty to warn purchasers or users of apparent or known defects in the product. And a third appellee defends the instruction as one involving contributory negligence.

If the instruction had been worded in terms of the appellant's duty to exercise reasonable care for his own safety, it might have been a proper instruction on contributory negligence, although it would have been unnecessary, since Lilly Varnish and Foster Engineering's Instruction No. 7, discussed *supra,* adequately informed the jury of appellant's duty to see obvious dangers. But worded as it was in terms of the duty of "anyone connected with the construction" (which undeniably included those having "charge of" and those "responsible for" the work) it was contradictory of appellant's Instruction No. 16[16] which prop-

---

16. Contradiction of appellant's Instruction No. 16 was not a stated ground of appellant's objection to this Freyn Bros.' Instruction No. 11, but the stated ground that said Instruction No. 11 was in conflict with Burns § 20-304, was to the same effect in view of the wording of appellant's Instruction No. 16, as follows:

erly quoted from Burns Ind. Stat. Ann. § 20-304 and was thereby contradictory of the statute itself. Appellant's Instruction No. 16 concluded by saying that if any of the defendants violated the statute they would be guilty of negligence. This Instruction No. 11 had the effect of saying that no one violated the statute by not enclosing and protecting the air well if its danger was "discoverable by a person of plaintiff's age and experience using reasonable care for his own safety." (Which seems almost to say that with his experience, at his age, appellant should have seen that he was stepping onto a dangerous area.) At best, this instruction is inaccurate, confusing and misleading. It should not have been given in the form presented. The first paragraph comes dangerously close to lending judicial approval to unnecessarily sloppy and careless housekeeping on construction sites. In so doing it violates the spirit of Burns § 20-304 which makes safety to life, limb and health the first concern, without regard to additional costs of suitable materials or safety appliances or safe conditions or operations and limited only by the necessity of preserving the reasonable efficiency of the work.

The error in giving a "technically erroneous" instruction often can be cured by the giving of other instructions which properly instruct the jury on the same point. For that purpose the court must look to all the instructions. *Finster* v. *Wray*, 131 Ind. App. 303, 164 N. E. 2d 660 (1960). If, from all the instructions, it appears that the

---

"You are instructed that [at] the time of the accident in question there was in full force and effect a statute in the State of Indiana which provided in part as follows:

'It is hereby made the duty of all owners, contractors, subcontractors, corporations, agents . . . engaged in the care, . . . management, construction, erection, . . . of any building, . . . or business of whatsoever kind . . . to require . . . that all shafts, openings, wells, stairways, floor openings, and similar places or conditions of danger, are inclosed and protected . . .'

"You are instructed that if you find, after considering all of the evidence in this case that the defendants or any of them violated the provisions of this statute, then they would be guilty of negligence."

challenged instruction *could not have* mislead the jury, it will be regarded as harmless. For instance, in *Prudential Ins. Co. v. Thatcher,* 104 Ind. App. 14, 19, 4 N. E. 2d 574 (1936), we said: "While we do not commend that part of the instruction . . . yet under all the facts in this particular case, we feel safe in saying that appellant was not harmed by it, and that the record affirmatively shows that the merits of this case were fairly tried and determined in the court below, and that the verdict of the jury was right upon the evidence".

Here, however, we cannot reach that conclusion. The errors inherent in the instruction itself are too misleading to be overcome by other correct instructions such as appellant's No. 16 with which it conflicts.

Another factor which prevents us from concluding that this case was fairly tried on the merits below is the giving of appellee Snodgrass' Instruction No. 8. Defects in appellant's objection to that instruction which have precluded us from considering it reversible *per se* do not, however, require us to ignore it in deciding whether "the merits of the cause were fairly tried and determined in the court below".

The judgment is reversed and the cause remanded with instructions to grant appellant's motion for new trial and for further proceedings not inconsistent with the views expressed in this opinion. Costs are assessed against appellees.

Pfaff, C. J., Hoffman and Sharp, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 824.

## ON PETITIONS FOR REHEARING

WHITE, J.—All appellees have filed petitions for rehearing and the broad thrust of all is that appellee Freyn Brothers' Instruction No. 11[1] correctly states the law notwithstanding

---

1. "It is a matter of common knowledge that hazards and dangers are present in homes and elsewhere in everyday life, and that hazards and dangers are likely to be greater on a construction site.

"Reasonable care did not require anyone connected with the construction here involved to place or post any barricades or warnings as to any hazardous or dangerous conditions which should have been obvious to or discoverable by a person of plaintiff's age and experience using reasonable care for his own safety."

its apparent conflict with the statute published as Burns Ind. Stat. Ann. § 20-304 and quoted, in part, in appellant's Instruction No. 16.[2] In our original opinion we stated that "[a]ppellees have cited no authority and made no express argument that this apparent statutory duty [as quoted from the statute by appellant's instruction] is illusory and applies only to 'shafts, openings, wells,' etc., which are not obvious to or discoverable by a person of plaintiff's age and experience using reasonable care for his own safety." Appellee Freyn Brothers, Inc., has now, for the first time, in its petition for rehearing, attempted to show that the statute makes no change in the common law duty of owners, contractors, etc. The petition charges that our opinion contravenes a ruling precedent of the Supreme Court as stated in *Cleveland, etc., R. Co.* v. *Ropp*, 190 Ind. 115, 129 N. E. 475 (1921), and *Emerson Brantingham Co.* v. *Growe*, 191 Ind. 564, 133 N. E. 919 (1922). But appellee has misread these cases as holding that "Burns § 20-304 does nothing more than declare the common law". Each of those cases was concerned merely with the last clause of the statute, which provides "and, generally it shall be the duty of all owners, . . . [etc.] to use every device, care, and precaution . . . ." This, indeed, is a general statutory provision of which *Cleveland, etc.* v. *Ropp, supra,* rightly said (190 Ind. at 121) :

> "These instructions are erroneous, because they exact more than ordinary care. They are copies of the language in the latter part of § 4, Acts 1911, p. 597 (§ 3862a *et seq.* Burns 1914), as follows:

---

2. "You are instructed that [at] the time of the accident in question there was in full force and effect a statute in the State of Indiana which provided in part as follows:
  'It is hereby made the duty of all owners, contractors, subcontractors, corporations, agents . . . engaged in the care, . . . management, construction, erection, . . . of any building, . . . or business of whatsoever kind . . . to require . . . that all shafts, openings, wells, stairways, floor openings, and similar places or conditions of danger, are inclosed and protected . . .'
  "You are instructed that if you find, after considering all of the evidence in this case that the defendants or any of them violated the provisions of this statute, then they would be guilty of negligence."

'And, generally, it shall be the duty of all owners, managers, operators, contractors, sub-contractors, and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plants, means, employment, or business of whatsoever nature, involving risk or danger to employes, or to the public, to use every device, care and precaution which it is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, cars, engines, machinery, appliances, apparatus, or other devices or materials, without regard to additional cost of suitable materials or safety appliances, or safe conditions, or operations, the first concern being safety to life, limb and health.'

"Statutes which are general in their terms do no more than declare the common law. *Monteith* v. *Kokomo Wood, etc., Co.* (1902), 159 Ind. 149, 151, 64 N. E. 610, 58 L. R. A. 944; *Benkowski* v. *Sanders & Egbert Co.* (1915), 60 Ind. App. 374, 380, 109 N. E. 924. This is but another way of saying that *the language quoted from the above statute has no effect at all in determining liability.*" (Emphasis added.)

As had already been pointed out in *Benkowski* v. *Sanders & Egbert Co.*, cited in the above quotation (60 Ind. App. at 380):

"There are other provisions of the act of 1911, *supra, which impose specific duties on persons engaged in the construction of buildings,* to provide specified kinds of flooring, staging, scaffolding, and protections for the workers engaged in such work, but the portion of § 4 quoted, which purports to apply to persons other than those engaged in the construction of buildings, imposes merely general duties, and not specific duties. *Where a statute lays a specific duty on an employer, violation on his part of such specific duty is negligence. Suelzer* v. *Carpenter* (1915), 183 Ind. 23, 107 N. E. 467; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 420, 73 N. E. 899; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 152, 64 N. E. 610, 58 L.R.A. 944. Where merely general duties are imposed, a somewhat different rule is applied. *Monteith* v. *Kokomo, etc., Co., supra.* 151."

This holding was approved and followed by the Indiana

Supreme Court in *Kawneer Mfg. Co.* v. *Kalter,* 187 Ind. 99, 104, 118 N. E. 561 (1918), as follows:

"Section 1 of the act approved March 6, 1911, *supra,* § 3862a Burns 1914), provides: 'That every employer, or person, managing or conducting any business, or work, or plant in the State of Indiana, of the character mentioned in this act, is, for the purposes of this act, conducting a dangerous occupation at the time of such occurrence, and subject to the provisions of this act.' And § 4 of the same act makes it 'the duty of all owners, contractors, sub-contractors, corporations, agents, or persons whatsoever, engaged in the * * * construction, erection, repair, alteration * * * of any building * * * to see and to require * * * that all scaffolding, staging * * * and all contrivances used are amply, adequately and properly constructed, to bear all weights and adapted to and perform the services and meet the requirements for which they are designed or used, with safety * * *,' and for a failure to do these things § 5, *supra* (§ 3862e Burns 1914), provides a penalty.

\* \* \*

"Assuming that the jury found that appellant was the 'employer' or 'contractor' conducting the work of erecting and altering the store front, then, under the statute, it was 'conducting a dangerous occupation.' It was by statute charged with a *specific duty* to see that all scaffolding was carefully selected, inspected and tested, so as to detect any defects, and to see that it was adequate and properly constructed to 'perform the service and meet the requirements' for which it was designed or used with safety. The complaint alleges that the scaffold on which appellee was working at the time of the accident was not adequate and was not properly constructed, and there is evidence to support this allegation. (Emphasis added.)

"True, as appellant claims, the act of March 6, 1911, *supra,* does not in so many words authorize the bringing of a civil action for damages on account of its violation, but under the allegations of the complaint this case proceeded to trial and judgment on the theory that appellee's injuries resulted from the negligence of appellant, his employer, by reason of the construction of a defective and unsafe scaffold, due to appellant's negligence, fault and omission of duty, as specifically set forth in the complaint, which also shows a violation of a duty imposed on appellant by § 4 of the act, *supra.* It has been held that '*where*

*a statute lays a specific duty on an employer, violation on his part of such specific duty is negligence.' Benkowski* v. *Sanders, etc., Co.* (1915), 60 Ind. App. 374, 380, 109 N. E. 924, 926, and cases cited." (Emphasis added.)

*Kawneer* (last above cited and quoted) was decided three years prior to the decision in *Cleveland, etc.,* v. *Ropp, supra,* on which appellee mistakenly relies as holding that Burns § 20-304 (the statute involved in all these cases, which is also § 5 of the Act of March 6, 1911, ch. 236, p. 597, the "Dangerous Employment Act") does nothing more than declare the common law. Both opinions cited and relied on *Benkowski,* but *Cleveland* did not mention *Kawneer,* probably because *Kawneer* has so little to say about the general provisions of the statute, being concerned only with the specific duties imposed by the statute.

One of the specific duties imposed by Burns § 20-304 (Acts 1911, ch. 236, § 4, p. 597) is the requirement that electrical wires be insulated. In *Linn Grove, etc., Power Co.* v. *Fenning,* 86 Ind. App. 170, 172, 154 N. E. 877 (1927), we said:

> "Appellee's complaint and cause of action is grounded on the first part of the above section, which makes it the duty of any person engaged in transmitting electricity of dangerous voltage to see that full and complete insulation shall be provided at all points where the public are liable to come in contact with the wires. *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577; *Cleveland, etc., R. Co.* v. *Ropp* (1921), 190 Ind. 115, 129 N. E. 475; *Emerson Brantingham Co.* v. *Growe* (1922), 191 Ind. 564, 133 N. E. 919, and similar cases cited by appellant are not decisive of the question involved. None of the cases cited undertakes to construe the part of said section now under consideration. *Some of the cases cited refer to the last part of the section and hold that part to be simply declarative of the common law.* Our attention has been called to no case holding the provision concerning the insulation of electric wire is simply declaratory of the common law, and we know of no decision so holding. The Supreme Court, in *Terre Haute, etc., Traction Co.* v. *Hayes* (1924), 195 Ind. 638, 145 N. E. 569, after quoting § 4443, *supra,* held that a complaint which

charged that an employer required an employee, in the discharge of his duties, to go into a room where there were wires carrying a high and dangerous current of electricity and which were not insulated, charged negligence. And, on the authority of that case, we hold the complaint in the instant case charged negligence." (Emphasis added.)

In the case at bar, as in *Linn Grove,* "[o]ur attention has been called to no case holding the provision concerning . . . [the inclosure and protection of all shafts, openings, wells, etc.] is simply declaratory of the common law." On the contrary, in *Monteith* v. *Kokomo Wood, etc., Co.,* 159 Ind. 149, 151, 64 N. E. 610, 58 L.R.A. 944 (1902), the distinction between general statutes which are merely declaratory of the common law and those which impose absolute and specific duties is clearly exemplified in such a way as to leave no doubt but that this provision must be classified as imposing an absolute and specific duty. *Monteith* is the other authority cited in *Cleveland, etc.* v. *Ropp, supra,* on which appellee relies. At page 151 of 159 Ind., it states:

"It is entirely clear, however, that where an absolute and specific duty to guard or fence dangerous machinery is imposed upon the master by statute, such new condition must, in a very material manner, affect the relations of the parties, and modify, to a considerable extent, their rights and duties as they existed at common law. And here a distinction is to be noted between statutes such as the employer's liability act (Acts 1893, p. 294, §§ 7083-7087 Burns 1901), which provide in general terms that the employer shall be liable for injuries to an employe where the injury is occasioned by reason of defects in the condition of ways, works, plant, tools, and machinery, etc., and statutes which require of the employer the performance of a specific duty, such as to guard or fence dangerous machinery. Statutes of the former class do little more than declare the rule of the common law. Statutes of the latter class impose specific obligations. A failure to comply with the requirements of the first may or may not be negligence. A violation of the second is an unlawful act or omission, a plain breach of a particular duty owing to the servant, and generally constitutes negligence *per se. Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357; *Baltimore, etc., R. Co.* v. *Conoyer,* 149 Ind. 524; *Shirk* v. *Wabash R. Co.,* 14 Ind. App.

126; Thompson, Neg. (2d ed.), §§ 10, 11, 211; *Western, etc., R. Co.* v. *Young,* 81 Ga. 397, 7 S. E. 912, 12 Am. St. 320; *Thompson* v. *Wright,* 22 Ont. 127."

The duty to inclose and protect shafts, openings, wells, etc., is a specific statutory duty which applies to all such places of danger. Those "which should have been obvious to or discoverable by a person of plaintiff's age and experience using reasonable care for his own safety" are not excepted. In fact, it is highly doubtful that there is any other exception. But no other possible exception is involved in Freyn Bros.' Instruction No. 11. It is, therefore, entirely irrelevant whether the limitation on the general duty in the last clause also means that the specific duty to inclose and protect shafts, openings, wells, etc., is also limited by the necessity for preserving the reasonable efficiency of the building.[3]

Some clarification is apparently necessary concerning our statement of what was held in the two cases cited in the following sentence from our opinion: "As interpreted in *Leet* v. *Block,* 182 Ind. 271, 274, 106 N. E. 373, 20 A.L.R. 654 (1914), and *Bruemmer* v. *Clark Equipment Co.,* 341 F. 2d 23 (7 Circ. 1965), that statute [Burns § 20-304] imposes duties only " ' " on the particular owner, contractor, or subcontractor who has "charge of" or is "responsible for" the works, etc., in question." ' " The intent of the whole paragraph is to say that this is all that those cases hold;[4] that they

---

3. Appellee Freyn Brothers' Instruction No. 9, to which appellant did not object, paraphrased the *general duty* of the last clause of the statute and pointed out that it applied only to the particular owner, etc., having charge of or responsible for the work and that, "in all events . . . [it] would not apply to work or conditions of risk or danger necessary to the reasonable efficiency of the areaway where plaintiff fell." We do not find that there was any request by any appellee that the jury be instructed that this limitation also applies to the *specific duty* to inclose and protect shafts, etc.

4. It is true, however, that *Leet* holds, in language quoted with emphasis by the Federal Court of Appeals in *Bruemmer* that: " 'It was the purpose of the enactment to fix a higher standard of care on the person having the particular work in charge . . . .' " 341 F.2d at 26, quoting 182 Ind. at 275. This, however, is *dicta*. The higher standard of care is not *dicta* as described in other cases quoted in the present opinion.

do not hold that the duty which the statute purports to impose on "such, 'particular owner'," etc., to inclose and protect "all shafts, openings, wells," etc., is illusory and applies only to such thereof as are not obvious to or discoverable by a person of plaintiff's age, etc.

No useful purpose would be served by mention of other reasons relied on for a rehearing.

Appellant has filed a motion asking that the petition for rehearing filed by appellee Freyn Bros., Inc., be dismissed or in the alternative be denied. Appellant's motion points out that the petition contains argument in violation of Supreme Court Rule 2-22 (Appellate Rule 11 in the new Indiana Rules of Procedure). The motion is well taken. *Ross* v. *Apple*, 143 Ind. App. 357, 16 Ind. Dec. 54, 241 N. E. 2d 872 (1968); *Barkey* v. *Schermerhorn*, 143 Ind. App. 310, 15 Ind. Dec. 549, 240 N. E. 2d 93 (1968).

The petitions for rehearing are denied.

Hoffman, P.J., Pfaff and Sharp, JJ., concur.

NOTE.—Reported in 155 N. E. 2d 123.